The defendants and one Houston Brown were indicted for an assault with a deadly weapon on one Way. There was evidence introduced on the part of the State tending to prove the guilt of all of the defendants, except Brown, and as to him, a nol. pros. was entered. The defendant Reavis, testifying in his own behalf and in behalf of the other defendants, said that they had a warrant for the Carson boys, and went in the night to Way's dwelling to get him to go and show them where the Carson boys were; had met Way that day, and told him they were looking for them; he said he had not seen them in two weeks. That night the witness and the other defendants, Reynolds and Hays, and one Miller, went in the yard of Way — went in one step of the door — called to him, and told him he had told them a lie that day when he said he had not seen the Carson boys in two weeks, and "that he must come and show them to us, that they had come for him as a witness." He admitted that they stayed near the door three or four minutes; that he had out his pistol in his right hand; that defendant Hays was two or three steps from him with a drawn sword in his hand; that Miller was there with a pistol in his pocket; that there were about a dozen men of their crowd near by in the road; that Way was sitting near the door, it being open, when the defendants went in the yard and to the door; that when they notified Way to go with them, etc., he got up and (679) slapped his hand on his breast and told them to shoot; that his wife "acted like a wild woman," and ran out into the yard and "screamed at the top of her voice;" Way and his wife ordered them to leave; they *Page 496 
remained near the door three or four minutes, and in the yard fifteen minutes. They had searched the house that day. The noise and confusion that night were very great. The neighbors came in. He admitted that the defendants (except Brown) and Miller went to the house to make Way go as a witness, if he resisted them and was not willing to go. They had a warrant for the Carsons, but they had neither a warrant nor a subpoena for Way, and had no warrant when they searched his house. They were not officers of the law. The other defendants, Reynolds and Hays, testified in substance to the same facts. His Honor told the jury that these three defendants were guilty "upon their own showing." The jury rendered a verdict of guilty against them, and they appealed from the judgment pronounced.
We consider what his Honor told the jury as equivalent to saying to them, that if they believed what the defendants themselves testified was true, each of them having given the same account of the affair, they should return a verdict of guilty against them. Hence, if putting the construction most favorable to them upon what they testified to, we find that they were guilty of an assault upon the prosecutor Way, they are not entitled to a new trial.
An assault is defined by Gaston, J., in S. v. Davis, 23 N.C. 125, to be "an intentional attempt by violence to do an injury to the person of another." It is elsewhere said to be "an attempt unlawfully to apply any — the least — actual force to the person of another, directly or indirectly." 1 A. E., 779. In the case cited above the learned (680) judge says that "it is difficult in practice to draw the precise line which separates violence menaced from violence begun to be executed, for until the execution is begun there can be no assault." And he adds, "we think, however, that where an unequivocal purpose of violence is accompanied by any act, which, if not stopped or diverted, will be followed by personal injury, the execution of the purpose is then begun, the battery is attempted." Now, in the case before us, each of the defendants stated that they went to the house of the prosecutor to make or force him to leave his home and accompany them. They had no authority to do this. They purposed by force or fear to compel him to go where they wished. Their intention was, they admit, to do this great violence to his person, to thus falsely imprison him. And false imprisonment generally includes an assault and battery, and always, at least, a technical assault. S. v. Lunsford, 81 N.C. 528. We have proof, then, of intended violence to the person of the prosecutor, not from *Page 497 
threatening words or gestures, but by their own admission. The intention is unequivocal. Was this unequivocal purpose of violence accompanied by any act, which, if it had not been stopped or diverted, would have been followed by personal injury? If so, according to the high authority cited above, the execution of the purpose was begun, and there was an assault.
We think it very clear from their own statement that the unlawful and most outrageous acts of the defendants would have been followed immediately by personal injury to the prosecutor, in which we, of course, include the enforced subjection of his body through fear or force to the command of the defendants, if their purpose had not been thwarted. The three defendants, accompanied by another, one with a pistol in his right hand, one with a drawn sword, and one with a pistol in his pocket, went to the door of the prosecutor's house, where he was sitting. All that is needed to make such an approach to a man an assault, that it is the beginning of the execution of violence to his person, is to (681) prove that there was a present purpose to commit such violence. That purpose may be proved by the words or gestures of the armed and advancing party, or, if the approach or attack is made in such a manner as to put a reasonable man in fear, and it does put him in fear, that will establish the purpose to commit violence, of the execution of which the act is the beginning. Here we have no need of the direct attempt or offer to shoot or strike to prove the purpose to commit violence. They admit it, and themselves testify to the commission of acts in the immediate presence of the prosecutor, which could have no other object than the consummation of that purpose. By their own testimony they established the fact that they passed "the line that separates violence menaced from violence begun to be executed," and, therefore, they were guilty of an assault.
No error.
Cited: S. v. Daniel, 136 N.C. 574; S. v. Hemphill, 162 N.C. 634. *Page 498