STATE v. DANIEL.

(Filed September 20, 1904).

ASSAULT.

> The cursing of a person and ordering him to come to the defendant, and he obeying through fear, is not an assault.

INDICTMENT against Richard Daniel, heard by *Judge C. M. Cooke* and a jury, at November Term, 1903, of the Superior Court of HALIFAX County.

Indictment for assault with a deadly weapon.

Edgar Alston, a witness for the State, testified: "I went to my hog-pen one Sunday at Littleton, about two months ago, taking them slops. Just below the hog-pen, when I got there, was the defendant and his brother-in-law, Mr. Burton. After I fed the hogs and started towards the house the defendant called me to come to him. I told him I was in a hurry to get back home to dress and go to preaching. He called me again, and said 'You come here.' I replied, 'Yes, boss-man, of course if you order me to come I'll come.' I pulled off my hat and went on to him, and he cursed me and said 'Why can't you come to me when I call you?' I told him I did. I always obey a white man when he calls me, and I knew he meant for me to come. Just about that time he snatched a knife out of his right-hand coat pocket that was open and put the blade right up against my throat and told me if I moved my hands he would cut my damned throat, and then he tapped me on the head with the handle of it. I

stood there with my hands right down by my sides until he told me to put my hat on and go to the house. Mr. Burton was standing near there, but did not try to stop him. I think the defendant was kind of intoxicated. I do not think if he had been sober he would have done so." On cross-examination the witness stated: "It was between eleven and twelve o'clock. I pulled my hat off as I started to him, and just as I got up to him I put my hat on, and he asked me why I did not come up to him when he called, and told me to take off my hat like a damn negro ought when he came up to talk to him, and then drew his knife and pulled off my hat."

The defendant, in his testimony, denied that he had used a knife, but admitted that he cursed the prosecutor, and stated that he had merely asked him to bring him a match and when he came told him he was too damned slow.

J. H. Burton, a witness for the defendant, testified that he is a brother-in-law of the defendant, and that the latter merely asked the prosecutor to bring him a match, and as the prosecutor started back to get it the defendant cursed him several times. The witness was with Daniel at the time, but saw no knife, though he may have had one without the witness seeing it. The prosecutor took off his hat after he came up to the defendant. The witness admitted that he did not say anything about a match at the trial before the magistrate.

There was evidence tending to show that the defendant was under the influence of liquor at the time of the alleged assault, and also at the trial before the magistrate, when he drew a stick back at his own father.

The prosecutor was recalled and testified that the defendant did not ask him for a match and did not state at the magistrate's trial that he had done so. The defendant was convicted of a simple assault, and appealed from the judgment rendered upon the verdict.

*Robert D. Gilmer, Attorney-General,* for the State.
*E. L. Travis,* for the defendant.

WALKER, J.   We must consider this case as if the Court
below had given only the first instruction to the jury as to
what would be sufficient to convict the defendant of a simple
assault, because the jury were told that if they found the
facts to be as stated in either one of the three instructions
they should return a verdict of guilty, and we are unable to
determine by which of the instructions the jury were influ-
enced in coming to their verdict.   We think that the second
and third instructions were correct in law; and if we could
see clearly and with absolute certainty that the jury acted
solely under them, or either one of them, there would be no
error and we would so declare; but as the jury may have
acted solely under the first instruction, we must assume in
this appeal, and in testing the correctness of the Judge's
charge, that they did so act.
〔The first instruction was that if the defendant cursed the
prosecutor, Alston, and ordered him to come to him, and
Alston obeyed through fear, the defendant was guilty of an
assault. 〕 Before the prosecutor reached the place near the
hog-pen where the defendant was standing, the latter had
made no threat nor had he offered or attempted any violence
to the person of the prosecutor, nor was there any display or
exhibition of force of any kind, so far as the evidence here
shows.   In this state of the case we are unable to sustain
this instruction as a correct statement of the law of assault.
It would seem, says *Reade, J.,* that there ought to be no dif-
ficulty in determining whether any given state of facts
amounts to an assault, but the behavior of men towards each
other varies by such mere shades that it is sometimes very
difficult to characterize properly their acts and words.   *State
v. Hampton,* 63 N. C., 14.   While the law relating to this

crime would seem to be simple and of easy application, we are often perplexed in our attempt to discriminate between what is and what is not an assault. But in this case we have no such difficulty, as the law applicable to the facts has been clearly stated and well settled by the decisions of this Court.

An assault is an intentional offer or attempt by violence to do any injury to the person of another. There must be an offer or attempt. Mere words, however insulting or abusive, will not constitute an assault, nor will a mere threat or violence menaced, as distinguished from violence begun to be executed. Where an unequivocal purpose of violence is accompanied by any act which, if not stopped or diverted, will be followed by personal injury, the execution of the purpose is then begun and there has been a sufficient offer or attempt. *State v. Davis,* 23 N. C., 125, 35 Am. Dec., 735; *State v. Reavis,* 113 N. C., 677. This principle, as stated by *Judge Gaston* in the first case cited, has been adopted as a correct exposition of the law of assault, not only in subsequent decisions of this Court, but in numerous cases decided in the courts of the other States. There must, therefore, be not only threatening words or violence menaced, but the defendant must have committed some act in execution of his purpose. It is not necessary at all that his words should be accompanied or followed by an actual battery, for a mere assault excludes the idea of a battery, but he must either offer to do violence, as by drawing back his fist or raising a stick, or attempt to do it, as by aiming a blow at another which does not take effect because it is warded off by a third person, or by shooting at another and missing the mark—all of which is clearly and fully explained by *Pearson, C. J.,* in *State v. Myerfield,* 61 N. C., 108. It is not necessary, in view of the facts of this case, that we should stop here to state how these acts can be qualified by words or otherwise, and with what restrictions or exceptions, so as to relieve the

accused of any guilt.    The law in this respect is also dis-
cussed in Myerfield's case, *supra*.

The principle is well established that not only is a person
who offers or attempts by violence to injure the person of
another guilty of an assault, but no one by the show of vio-
lence has the right to put another in fear and thereby force
him to leave a place where he has the right to be.    *State v.
Hampton,* 63 N. C., 13; *State v. Church,* 63 N. C., 15;
*State v. Rawles,* 65 N. C., 334; *State v. Shipman,* 81 N. C.,
513; *State v. Martin,* 85 N. C., 508, 39 Am. Rep., 711;
*State v. Jeffreys,* 117 N. C., 743.    It is not always neces-
sary to constitute an assault that the person whose conduct
is in question should have the present capacity to inflict
injury, for if by threats or a menace of violence which he
attempts to execute, or by threats and a display of force, he
causes another to reasonably apprehend imminent danger
and thereby forces him to do otherwise than he would have
done, or to abandon any lawful purpose or pursuit, he com-
mits an assault.    It is the apparently imminent danger that
is threatened rather than the present ability to inflict injury
which distinguishes violence menaced from an assault. *State
v. Jeffries* and *State v. Martin, supra.*    It is sufficient if the
aggressor, by his conduct, lead another to suppose that he will
do that which he apparently attempts to do.    1 Archb. Cr.
Pr., Pl. & Ev. (8 Ed. by Pomeroy), 907, 908.

If, therefore, the defendant had threatened the prosecutor
with violence and the threat had been accompanied by any
show of force, such as drawing a sword or knife, or if he had
advanced towards the prosecutor in a menacing attitude,
even without any weapon, and had been stopped before he
delivered a blow, and the prosecutor had been put in fear and
compelled to leave the place where he had the lawful right to
be, the assault would have been complete, although he was
not at the time in striking distance.    But in this case, so far

as the facts recited in the first instruction should be considered, there was not even violence menaced, but, at most, only offensive and profane words. There must be an overt act or an attempt, or the unequivocal appearance of an attempt, with force and violence, to do a corporal injury—such an act as will convey to the mind of the other person a well-grounded apprehension of personal injury. Bare words will never do, for, however violent they may be, they cannot take the place of that force which is necessary to complete the offense. They are often the exhibition of harmless passion and do not by themselves constitute a breach of the peace, as the law supposes that against mere rudeness of language ordinary firmness will be a sufficient protection. *State v. Covington,* 70 N. C., 71.

It may be, as suggested, that the positions of the two parties were relatively unequal, as the defendant belonged to a strong and dominant and the prosecutor to a weak and servile race, and it may further be that the words of the prosecutor as he approached the defendant were the cringing utterances of servility and showed great humility and submissiveness because of the lowliness of his station in life as compared with that of the defendant, and therefore he abjectly obeyed the latter's command to come to him. All this may be true; and while it reflects little credit upon the defendant, whose conduct as it now appears to us cannot be too severely condemned, it cannot have the effect of reversing a long-established principle of the law to which we must adhere, it being founded upon reason and justice and treated by the courts and the text writers as one of universal application. The case of *State v. Millsaps,* 82 N. C., 549, illustrates the extent to which the principle has been carried. In that case it appeared that the defendant addressed grossly insulting language to the prosecutor and then picked up a stone about twelve feet from the prosecutor, but did not offer to throw it,

and the Court held that it was not an assault, but only vio-
lence menaced, and it was therefore error for the lower Court
to charge the jury that if the acts and words of the defendant
were such as to put a man of ordinary firmness in fear of
immediate danger, and the defendant had the ability at the
time to inflict an injury, he would be guilty. Substantially
to the same effect is *State v. Mooney*, 61 N. C., 434. See
also, *Johnson v. State*, 43 Texas, 576. In neither of those
cases, though, was the prosecutor deterred from doing what
he had a right to do, or in any respect unlawfully restrained
in his action or conduct or constrained to act contrary to his
wishes.

It was argued that the verdict necessarily excluded the
idea that a knife was drawn by the defendant, but we cannot
assent to that conclusion, as the jury may have proceeded
under either the second or third instruction in convicting the
defendant. The prosecutor's testimony as to the use of the
knife was positive, and opposed to it was that of the defend-
ant, while that of Mr. Burton was negative. The jury did
not accept and act upon the defendant's testimony, as they
could not have returned the verdict they did if such had been
the case, and, having accepted the prosecutor's version, as
shown by the verdict, they may have adopted it in its en-
tirety. While it may be true, therefore, that they convicted
the defendant under the first instruction, it does not by any
means follow that they did not do so under the second or
third; but as we are unable to decide with any legal cer-
tainty which instruction influenced them, we must assume
and decide that the verdict was given under the first or erro-
neous instruction, which entitles the defendant to another
trial.

New Trial.