### STATE v. PAUL A. ALLEN.

(Filed 12 December, 1956.)

**1. Assault and Battery § 4—**

In prosecutions for assault by intimidation, each case must depend upon its own peculiar circumstances, but it is sufficient to constitute a criminal assault if there is such show of violence as to cause reasonable apprehension of immediate bodily harm so as to put a reasonable person in fear whereby he is forced to leave a place where he has a right to be.

**2. Assault and Battery § 14—Evidence of assault on female by show of violence causing her to leave place where she had a right to be, held sufficient.**

Evidence tending to show that defendant repeatedly, day after day, stopped his car for a few minutes within a very few feet of prosecutrix at a place on a public street corner where prosecutrix customarily awaited her ride to work, that defendant would constantly gaze at her and move the lower part of his body back and forth implying a lustful desire directed particularly toward prosecutrix, and that because of fear of him prosecutrix quit walking the usual way to the place for her ride, and that, on the occasion before his arrest, caused prosecutrix to run to the steps of a public school at the place, *is held* sufficient to be submitted to the jury in a prosecution for assault on a female. G.S. 14-33.

JOHNSON, J., not sitting.

APPEAL by defendant from *Gwyn, J.,* April Term 1956 of GUILFORD (Greensboro Division).

Criminal prosecution upon a warrant charging defendant with an assault on a female person, G.S. 14-33, heard on appeal from the Municipal-County Court, Criminal Division, upon the defendant's plea of Not Guilty.

The State's evidence presented these facts:

Nancy Powers, a 21-year-old woman, lives with her parents at 1519 Andover Avenue, one block off of Summit Avenue, in the city of Greensboro. She is employed as a stenographer by Sears, Roebuck & Co., at its local place of business. She regularly rides to work each working day with Mr. & Mrs. Paul Rumley. She walks down Andover Avenue to Textile Drive, and East up Textile Drive to get to Summit Avenue, where she stands on the Southwest corner of Summit Avenue and Textile Drive to wait for her ride. The Rumleys regularly pick her up there about 25 minutes to 8:00 o'clock each working morning. On the morning of 19 January 1956 when Nancy Powers was walking down Andover Avenue, to reach the place where the Rumleys pick her up, the defendant slowly drove his automobile along Andover Avenue, staring at her, and practically stopped when he got beside her. She did not know him, and defendant's acts frightened her. She walked on to her regular place for her ride. While she was waiting there for her ride, she saw the defendant a few minutes later at the corner of Andover Avenue and Textile Drive. His automobile was stopped. He then left, drove up to the corner of Textile Drive and Summit Avenue, and sat there about four or five minutes staring intently at her. He was about 12 or 15 feet from her, and seemed to be moving back and forth the lower part of his body. She was frightened by his sitting there staring at her. The Rumleys came by, and she left.

On the morning of 20 January 1956 Nancy Powers went the same way to the place where the Rumleys met her. Her father followed her in their car, and parked at the Northwest corner of Summit Avenue, and Textile Drive. While there she saw the defendant driving his car South on Summit Avenue. He stopped his car about 200 yards behind their car. In two or three minutes the defendant started his car and came by her driving very slow and looking at her, as if he were going to stop.

Nancy Powers did not go to work on Saturday, 21 January, or Sunday, 22 January. On Monday, 23 January, she went to work. She left her home, and cut through the row of houses on Summit Avenue, instead of going down Andover Avenue. Upon reaching Summit Avenue, she turned to the right, and went to the usual place to meet the Rumleys. She saw the defendant coming South on Summit Avenue. He drove slowly by looking at her, and turned at the corner South of Textile Drive and Summit Avenue. Three times on that morning he slowly drove by her looking at her. When he would get to the intersection of Textile Drive and Summit Avenue, he would stop, sit there and look at her, and seemed to be moving the lower part of his body. At that time he was across a paved street from her. She testified: "That morning I ran toward the school; I wait for my ride in front of

Proximity School; I started walking fast toward the school and got almost to the walk which leads up to the school, I saw him going up the other side of the boulevard, going north on Summit Avenue and I ran to the steps of the school; then my ride came and picked me up. I called my grandfather when I got to work that morning."

On Tuesday, 24 January, there was snow, and Nancy Powers did not see the defendant, when she went to meet the Rumleys.

On Wednesday, 25 January 1956, Nancy Powers in going to meet the Rumleys cut through and between the houses on Summitt Avenue, and went down Summit Avenue to the corner to the usual place for her ride with the Rumleys. As she approached this place, she saw the defendant sitting in his car on the Northwest corner of Textile Drive and Summit Avenue, and he was parked in front of a car in which her grandfather was sitting. As she stood waiting for her ride, the defendant drove his car across to the Southwest corner and stopped three or four feet in front of her. He sat there four or five minutes staring at her, and moving his body back and forth. Then her grandfather drove his car in front of the defendant's car, stopped, got out, went to the defendant's car and asked him to get out. The defendant drove off fast almost hitting her grandfather. She did not go anywhere then, though she was frightened, because her grandfather was there.

J. H. Powers, Nancy's grandfather, testified that when she called him over the telephone on 23 January 1956, and told him about the defendant's acts, she was crying.

Sergeant H. M. Evans, a member of the Greensboro Police Department, arrested the defendant on the charge in this case. He asked the defendant if he was the person, who had been driving by Nancy Powers. The defendant replied he was, and had been watching her for about ten days, and turned on Summit Avenue to see her. The defendant said he was engaged in self-pollution, and was trying to get Nancy Powers to look at him, while he was so engaged.

The defendant told Lt. Maurice Geiger of the Greensboro Police Department that what Sergeant Evans said he was doing was true.

The defendant offered no evidence.

The jury returned a verdict of Guilty, and from judgment of imprisonment imposed for 30 days the defendant appeals.

*George B. Patton, Attorney General, and Harry W. McGalliard, Assistant Attorney General, for the State.*

*Z. H. Howerton, Jr., for Defendant, Appellant.*

PARKER, J. The defendant presents for decision one question: did the trial court commit error in denying his motion for judgment of nonsuit made at the close of the State's evidence?

The warrant charges an assault, not an assault and battery.

In *S. v. McIver,* 231 N.C. 313, 56 S.E. 2d 604, the facts were as follows: On 7 January about 7:00 a.m. Mrs. Helen Outlaw was walking to work on Russell Street in the city of Fayetteville. Near the railroad crossing she met the defendant, who said to her, "you are looking pretty this morning." On Thursday on her way to work she met him again. It had been raining and she was walking a little to the edge of the sidewalk. She saw the defendant coming toward her, and he started talking. This Court said his words may be fairly construed as an indecent sexual proposal. She was frightened, and ran across the street. On Friday morning she met the defendant at the same place, and he made a similar remark. Police were nearby because Mrs. Outlaw had told them of the former occurrences, and they arrested the defendant. This Court held that the evidence was properly submitted to the jury, and said: "North Carolina is rightly listed as one of the jurisdictions in which it is not essential to the definition of assault, or to the completion of that crime, that there should be a present ability to carry out the threat or menace if it is sufficient in manner and character to cause the person menaced to forego some right of conduct he intended to exercise, or to leave a place where he had a right to be."

In *S. v. Sutton,* 228 N.C. 534, 46 S.E. 2d 310, this Court held the State's evidence made out for the jury a case of assault, where the defendant's standing and staring at Mrs. Louise Allen caused her to leave her office where she was at work in the courthouse at Plymouth, and go out into the hall, and stand on the first step leading to the courtroom. The defendant followed her into the hall, and continued to stare at her. She stepped up two more steps, and the defendant stepped towards her two more steps still staring. She became frightened and ran up the steps screaming, and the defendant ran up the steps behind her.

In *S. v. Williams,* 186 N.C. 627, 120 S.E. 224, evidence that a 23-year-old man several times accosted a 15-year-old girl on the streets of a town, with improper solicitation, causing her to flee from him in a direction she had not intended to go, and, in her great fear of him, causing her to become nervous and to lose sleep at night, was held to make out a case for the jury of an assault on a female.

In *S. v. Daniel,* 136 N.C. 571, 48 S.E. 544, it is said: "The principle is well established that not only is a person who offers or attempts by violence to injure the person of another guilty of an assault, but no one by the show of violence has the right to put another in fear and thereby force him to leave a place where he has a right to be."

In *S. v. Martin,* 85 N.C. 508, the Court said: "The principle governing this case has been decided by several adjudications on the subject by this Court. The principle is that no man by the show of violence

has the right to put another in fear and thereby force him to leave a place where he has the right to be."

The rules of law in respect to assaults are plain, but their application to the facts is sometimes fraught with difficulty. Each case must depend upon its own peculiar circumstances.

The defendant told Sergeant of Police H. M. Evans he had been watching Nancy Powers for ten days. Considering the evidence in the light most favorable to the State, and giving to it the benefit of every reasonable inference to be drawn therefrom, as the law requires us to do, when a motion for judgment of nonsuit is made, the facts show the defendant repeatedly day after day stopping his car a few minutes within a few feet of Nancy Powers, while she was standing on a public street corner in the city of Greensboro waiting for her ride to go to work, a place where she had a right to be, gazing at her and moving the lower part of his body back and forth, implying a lustful desire directed particularly toward her. It seems apparent from the defendant's conduct and acts, that he, possessed by his lustful obsession for Nancy Powers, deliberately planned to meet her at the same place on successive mornings. Because of fear of him she quit walking the usual way to the place for her ride, and went a different way. On the morning of 23 January 1956 she was standing on the street corner waiting for her ride to work, and three times the defendant drove by looking at her, and, when he would get to the intersection of Textile Drive and Summit Avenue, he would stop his car, sit there, look at her, and seemed to be moving the lower part of his body. At such times he was across a paved street from her. Such acts of the defendant frightened her, and caused her to run to the steps of Proximity School. At that time the Rumleys came along, and she left. Considering the defendant's acts there on the morning of 23 January 1956, in connection with similar acts of the defendant there on 19 January 1956 and 20 January 1956, in the light most favorable to the State, can it be said as a matter of law, thereby taking the case away from the jury, that the defendant's acts on 23 January 1956 were insufficient to constitute a show of violence creating in the mind of Nancy Powers a reasonable apprehension that the defendant was planning to get out of his car and inflict upon her immediate bodily harm to satisfy his lust, and thereby put her in fear, and forced her to run from a place where she had a right to be? In our opinion, the answer to the question is, No: it is a case for the jury.

A show of violence, causing "the reasonable apprehension of immediate bodily harm" (*S. v. Ingram*, 237 N.C. 197, 74 S.E. 2d 532), whereby another is put in fear, and thereby forced to leave a place where he has a right to be, is sufficient to make out a case of an assault. *S. v. McIver, supra; S. v. Daniel, supra; S. v. Martin, supra.*

The trial court correctly denied defendant's motion for judgment of nonsuit. In the trial below we find

No error.

JOHNSON, J., not sitting.