Vacated and remanded by published opinion. Chief Judge TRAXLER wrote the opinion in which Judge AGEE joined. Judge GREGORY wrote a separate dissenting opinion.
TRAXLER, Chief Judge:
Police officers dispatched to the residence of Rodney Marshall Vinson found a rifle and ammunition during a consensual search. After determining that Vinson had a prior North Carolina conviction amounting to a “misdemeanor crime of domestic violence,” 18 U.S.C. § 921(a)(33)(A), the government charged Vinson with possession of a firearm by a prohibited person, see 18 U.S.C. § 922(g)(9). The district court granted Vinson’s motion to dismiss the indictment, concluding that Vinson was not a prohibited person because the state statute at issue did not, as a categorical matter, qualify as a misdemeanor crime of domestic violence. The government appeals, arguing that the analytical approach referred to as the “modified categorical approach” applies to this case and establishes that Vinson was convicted of a qualifying misdemeanor crime of domestic violence. We agree with the government, and we therefore vacate the district court’s order dismissing the indictment and remand with instructions that the district court reinstate the indictment against Vinson.
I.
Section 922(g) prohibits the possession of firearms by various classes of persons, including those convicted of a “misdemean- or crime of domestic violence.” 18 U.S.C. § 922(g)(9). Subject to certain exceptions not relevant here, a crime qualifies as a “misdemeanor crime of domestic violence” if it:
(i) is a misdemeanor under Federal, State, or Tribal ... law; and
(ii) has, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon, committed by a current or former spouse, parent, or guardian of the victim, by a person with whom the victim shares a child in common, by a person who is cohabiting with or has cohabited with the victim as a spouse, parent,' or guardian, or by a person similarly situated to a spouse, parent, or guardian of the victim.
18 U.S.C. § 921(a)(33)(A).
The existence of the domestic relationship between the victim and defendant specified in the statute is an element of the § 922(g)(9) charge that must be *421 proven beyond a reasonable doubt by the government, but the relationship need not be an element of the underlying state statute. See United States v. Hayes, 555 U.S. 415, 426, 129 S.Ct. 1079, 172 L.Ed.2d 816 (2009). As is clear from the terms of the statute, the use or attempted use of physical force, or threatened use of a deadly weapon, must be an element of the underlying state offense. The “physical force” element of § 921 (a)(33)(A) is satisfied “by the degree of force that supports a common-law battery conviction,” United States v. Castleman, — U.S. -, 134 S.Ct. 1405, 1413, 188 L.Ed.2d 426 (2014), “namely, offensive touching,” id. at 1410.
Vinson was convicted under N.C. Gen. Stat. § 14-33, a statute that classifies simple and aggravated forms of misdemeanor assault, assault and battery, and affray. Subsection (a) provides that “[a]ny person who commits a simple assault or a simple assault and battery or participates in a simple affray is guilty of a Class 2 misdemeanor.” N.C. GemStat. § 14-33(a). Subsection (c) addresses aggravated forms of the crimes, providing that:
(c) ... [A]ny person who commits any assault, assault and battery, or affray is guilty of a Class A1 misdemeanor if, in the course of the assault, assault and battery, or affray, he or she:
(1) Inflicts serious injury upon another person or uses a deadly weapon;
(2) Assaults a female, he being a male person at least 18 years of age;
(3) Assaults a child under the age of 12 years;
(4) Assaults an officer or employee of the State or any political subdivision of the State, when the officer or employee is discharging or attempting to discharge his official duties;
(5) Repealed ...; or
(6) Assaults a school employee or school volunteer when the employee or volunteer is discharging or attempting to discharge his or her duties as an employee or volunteer, or assaults a school employee or school volunteer as a result of the discharge or attempt to discharge that individual’s duties as a school employee or school volunteer....
N.C. Gen.Stat. § 14-33(c). Because there is no statutory definition of assault, battery, or affray, the common-law rules governing these crimes apply to prosecutions under N.C. Gen.Stat. § 14-33. See State v. Roberts, 270 N.C. 655, 155 S.E.2d 303, 305 (1967). The record establishes that Vinson was convicted of violating subsection (c)(2) of the statute.
II.
To determine whether a prior conviction renders the defendant a prohibited person under § 922(g), we apply the familiar “categorical approach.” Castleman, 134 S.Ct. at 1413. Under the categorical approach, we look “ ‘only to the fact of conviction and the statutory definition of the prior offense’...., focus[ing] on the elements of the prior offense rather than the conduct underlying the conviction.” United States v. Cabrera-Umanzor, 728 F.3d 347, 350 (4th Cir.2013) (internal quotation marks omitted).
A modification to the categorical approach may be used in cases where the underlying state crime “consists of multiple, alternative elements creating several different crimes, some of which would match the generic federal offense and others that would not.” Omargharib v. Holder, 775 F.3d 192, 197 (4th Cir.2014) (internal quotation marks omitted). When such “divisible” crimes are at issue, we may apply the “modified categorical approach,” which permits us “to examine a limited class of documents to determine which of a [crime’s] alternative elements formed the *422 basis of the defendant’s prior conviction.” Descamps v. United States, — U.S.-, 133 S.Ct. 2276, 2284, 186 L.Ed.2d 438 (2013).[1] “General divisibility, however, is not enough; a [state crime] is divisible for purposes of applying the modified categorical approach only if at least one of the categories into which the [crime] may be divided constitutes, by its elements, [a qualifying predicate offense].” Cabrera-Umanzor, 728 F.3d at 352; see Descamps, 133 S.Ct. at 2285.
The district court concluded that § 14-33(c)(2) was not divisible and that the modified categorical approach was therefore inapplicable. Applying the categorical approach, the district court concluded that a violation of 14-33(c)(2) did not amount to a misdemeanor crime of domestic violence because the use or threatened use of physical force is not an element of assault under North Carolina law. In reaching this conclusion, the district court applied this court’s decision in United States v. White, 606 F.3d 144 (4th Cir.2010), and interpreted the “physical force” requirement of § 921(a)(33)(A)(ii) to mean “violent force,” see id. at 153 (“[T]he phrase ‘physical force’ means violent force — that is, force capable of causing physical pain or injury to another person.” (internal quotation marks omitted)).
After the district court granted Vinson’s motion to dismiss, however, the Supreme Court issued its decision in Castleman and held, directly contrary to our holding in White, that violent force was not necessary to satisfy the “physical force” requirement of § 921(a)(33)(A)(ii). See Castleman, 134 S.Ct. at 1413. Instead, the Court held that the statute “incorporated the common-law meaning of ‘force’ — namely, offensive touching,” id. at 1410, and that “the requirement of ‘physical force’ is satisfied, for purposes of § 922(g)(9), by the degree of force that supports a common-law battery conviction,” id. at 1413.
III.
The sole issue on appeal is whether Vinson’s conviction under N.C. Gen.Stat. § 14-33(c)(2) qualifies as a conviction for a misdemeanor crime of domestic violence (“MCDV”) as defined by 18 U.S.C. § 921(a)(33)(A). The government does not challenge the district court’s determination that Vinson’s conviction would not qualify as an MCDV under the categorical approach.[2] Instead, the government argues that, contrary to the district court’s conclu *423 sion, § 14-33(c)(2) is divisible, such that the modified categorical approach may be applied. And because the charging document in this case shows that the conviction was predicated on a battery of Vinson’s wife, the government contends that the modified categorical approach establishes that Vinson was convicted of an MCDV and that the district court therefore erred by dismissing the indictment against Vinson.
A.
Under N.C. Gen.Stat. § 14-33(c)(2), a defendant is “guilty of a Class A1 misdemeanor if, in the course of the assault, assault and battery, or affray, he ... [assaults a female, he being a male person at least 18 years of age.” The district court understood § 14 — 33(c)(2) as establishing the crime of assault on a female, a crime that can be committed through an assault, assault and battery, or an affray. In the district court’s view, assault, battery, and affray were alternate means of committing the crime, not alternate elements, such that § 14 — 33(c)(2) was not divisible. See Omargharib, 775 F.3d at 198 (explaining that alternate means of committing a single crime do make the crime divisible); see also Descamps, 133 S.Ct. at 2285 n. 2.
Section 14-33(e)(2)’s “in the course of the assault, assault and battery, or affray” language certainly sounds like language creating an element of a crime. Cf., e.g., 18 U.S.C. § 924(c)(1) (creating enhanced sentence for a defendant who “uses or carries a firearm” “during and in relation to any crime of violence or drug trafficking crime” (emphasis added)); United States v. Strayhorn, 743 F.3d 917, 925 (4th Cir.) (“To prove [a] violation of 18 U.S.C. § 924(c)(1), the government must show that the defendant used or carried a firearm and that he did so during and in relation to a drug trafficking crime or a crime of violence.”), cert. denied, — U.S. -, 134 S.Ct. 2689, 189 L.Ed.2d 229 (2014). Nonetheless, we are “bound by the state supreme court’s ... determination of the elements of the potential predicate offense,” United States v. Hemingway, 734 F.3d 323, 333 (4th Cir. 2013) (internal quotation marks and alterations omitted), and the only elements of assault on a female under § 14-33(c)(2) identified by the Supreme Court of North Carolina are “(1) an assault (2) upon a female person (3) by a male person (4) who is at least eighteen years old,” State v. Wortham, 318 N.C. 669, 351 S.E.2d 294, 296 (1987). Because the statute’s in-the-course-of language does not create elements of the offense, that language does not render the crime divisible.
The government, however, contends that the crime is divisible because North Carolina law defines “assault” through alternate elements. North Carolina law includes three different definitions of the crime of assault. First, under what can be called the “attempted battery” formulation, an assault can be committed by “an overt act or an attempt, or the unequivocal appearance of an attempt, with force and violence, to do some immediate physical injury to the person of another, which show of force or menace of violence must be sufficient to put a person of reasonable firmness in fear of immediate bodily harm.” Roberts, 155 S.E.2d at 305 (internal quotation marks omitted). Second, under the “show of violence” formulation, an assault can be committed by “a show of violence accompanied by reasonable apprehension of immediate bodily harm or injury on the part of the person assailed which causes him to engage in a course of conduct which he would not otherwise have followed.” Id. Finally, under the “completed battery” formulation, an assault conviction may be premised on proof of a *424 battery. See In re K.C., — N.C.App. -, 742 S.E.2d 239, 243 (2013) (“When a battery has occurred, assault may be proven by a finding of either assault or battery on the victim.”); State v. Britt, 270 N.C. 416, 154 S.E.2d 519, 521 (1967) (“A battery always includes an assault, and is an assault whereby any force is applied, directly or indirectly, to the person of another.”). The government argues that these different formulations of assault are alternate elements that render the crime divisible and thus permit application of the modified categorical approach.
B.
As we have explained, the modified categorical approach applies only in cases where the state crime is “divisible” because it “consists of multiple, alternative elements creating several different crimes, some of which would match the generic federal offense and others that would not.” Omargharib, 775 F.3d at 197 (internal quotation marks omitted).
1.
Taking the last part of the divisibility definition first, we must determine whether “at least one of the categories into which the [crime] may be divided constitutes, by its elements, [a qualifying predicate offense].” Cabrera-Umanzor, 728 F.3d at 352. Given the Supreme Court’s decision in Castleman, that question is easily answered in the affirmative.
As previously discussed, the Court in Castleman held that § 921(a)(33)(A)’s “physical force” requirement “is satisfied ... by the degree of force that supports a common-law battery conviction,” Castleman, 134 S.Ct. at 1413, including “mere offensive touching,” id., and indirect applications of force, such as deceiving the victim into drinking poison, see id. at 1414-15. The definition and scope of “battery” under North Carolina law is no broader than the common-law definition set out in Castleman. See, e.g., State v. Sudderth, 184 N.C. 753, 114 S.E. 828, 829 (1922) (defining battery as, inter alia, “an assault whereby any force, however slight, is actually applied to the person of another directly or indirectly”); State v. Monroe, 121 N.C. 677, 28 S.E. 547, 548 (1897) (druggist who placed diarrhea-inducing croton oil on a piece of candy at customer’s request guilty of assault and battery when druggist knew customer intended to give tainted candy to friend as a prank). Thus, any conviction for the completed-battery form of assault would necessarily include a use of physical force sufficient to satisfy the federal definition of an MCDV. Accordingly, if North Carolina’s different theories of assault make the crime divisible, use of the modified categorical approach would be proper because the crime of assault by completed battery categorically qualifies as an MCDV.[3] We turn to the divisibility question now.
2.
“[A] crime is divisible under Des-camps only if it is defined to include multiple alternative elements (thus creating multiple versions of a crime), as opposed to multiple alternative means (of committing the same crime).” Omargharib, 775 F.3d at 198. “Elements, as distinguished from means, are factual circumstances of the offense the jury must find unanimously and beyond a reasonable doubt.” Id. (internal quotation marks omitted). Although we have found no North Carolina case that directly answers the means-or- *425 elements question required by Descamps,[4] we are satisfied that, as the government argues, the alternate formulations of the crime of assault are alternate elements of what are effectively separate crimes, not alternate means of committing the same crime.[5]
Preliminarily, we note that each formulation of the crime involves a different type of conduct — an attempted use of force; a show of violence without even an attempted use of force; and a completed, noncon-sensual use of force against another person. Each of the formulations has its own unique set of elements, and each set of elements directs the jury’s focus to different aspects of the crime- — -the attempted-battery formulation of assault “places emphasis on the intent or state of mind of the person accused,” Roberts, 155 S.E.2d at 305, while the show-of-violenee form “places the emphasis on the reasonable apprehension of the person assailed,” id., and the completed-battery form focuses “not [on] the hostile intent of the defendant, but rather [on] the absence of consent to the contact on the part of the plaintiff,” In re K.C., 742 S.E.2d at 244 (internal quotation marks omitted). That the kind of conduct proscribed by the different formulations of assault differs quite significantly suggests that, for purposes of our § 922(g)(9) analysis, the different formulations should be treated as separate crimes warranting the use of the modified categorical approach. See Chambers v. United States, 555 U.S. 122, 126, 129 S.Ct. 687, 172 L.Ed.2d 484 (2009) (holding that modified categorical approach may be applied to statute that proscribed “several different kinds of behavior” that “differ[ ] so significantly” from each other that they must, for purposes of the predicate-offense inquiry, be treated as separate crimes).[6]
Moreover, North Carolina’s assault formulations are fundamentally different in *426 nature from those things that we have previously identified as alternate means under Descamps. We have held that non-exhaustive lists of various acts that satisfy an element of a crime are alternate means, not alternate elements.. See Hemingway, 734 F.3d at 333-34; Cabrera-Umanzor, 728 F.3d at 353. The assault formulations at issue here, however, provide fully functioning, stand-alone, alternative definitions of the offense itself, and these definitions capture the entire universe of the ways in which an assault may be committed. The nature and operation of the assault formulations thus indicate that they operate as alternate definitions' or elements for the offense of assault, not alternate means of committing the offense. See Descamps, 133 S.Ct. at 2291 ("Courts may modify the categorical approach to accommodate alternative statutory definitions.” (second emphasis added; citations and internal quotation marks omitted)); State v. Barksdale, 181 N.C.App. 302, 638 S.E.2d 579, 582 n. 1 (2007) (acknowledging, in case involving attempted-battery form of assault, “a second, different definition of assault called the ‘show of violence’ rule” (emphasis added)).
When determining the divisibility of a state crime, this court has looked to the manner in which the offense is charged to the jury. See Omargharib, 775 F.3d at 199 (considering pattern jury instructions when determining whether offense was divisible under Descamps); United States v. Royal, 731 F.3d 333, 341 (4th Cir.2013) (“[T]o decide whether ‘offensive physical contact’ and ‘physical harm’ are alternative elements of the completed battery form of second-degree assault, we consider how Maryland courts generally instruct juries with respect to that offense.”). If the different formulations were alternate means rather than alternate elements, one would expect to find cases where all three formulations were included in the jury instructions. See, e.g., State v. Hartness, 326 N.C. 561, 391 S.E.2d 177, 178-80 (1990) (trial court did not err in instructing jury that “[a]n indecent liberty is an immoral, improper or indecent touching or act by the defendant upon the child,” because “immoral, improper, or indecent liberties” referred to in statute were not elements of the offense of taking an indecent liberty with a child, but alternative means of violating the statute). In North Carolina, however, courts generally are not required to give the jury any definition of assault beyond a description of the charged conduct. -See, e.g., State v. Hewitt, 34 N.C.App. 152, 237 S.E.2d 338, 339 (1977) (trial court’s failure to define assault not error: “[T]he trial judge instructed the jury that the first element the State must prove was that the defendant assaulted [the victim] by intentionally shooting him with a pistol. This instruction explained the term assault and applied the law to the evidence.” (emphasis omitted)). Thus, while our research has revealed no case where all three formulations were charged to the jury, there are numerous cases where assault is defined only by way of the charged conduct, such that the jury is presented with only one formulation of the offense. See State v. West, 146 N.C.App. 741, 554 S.E.2d 837, 840 (2001) (no error in jury instructions that “only define[d] assault as committed by a battery”); State v. Dammons, 120 N.C.App. 182, 461 S.E.2d 6, 8 (1995) (instructions in assault case proper where trial court informed jury that “the State was required to prove beyond a reasonable doubt that defendant ‘intentionally’ shot [the victim] with a handgun” and that “defendant would not be guilty of the assault if the shooting was accidental”); State v. Daniels, 38 N.C.App. 382, 247 S.E.2d 770, 771-72 (1978) (failure to define assault not error where “jury was instructed that it must find from the evi *427 dence and beyond a reasonable doubt that defendant ‘struck [the victim] over- the head with a blackjack’ ”); State v. McCoy, 34 N.C.App. 567, 239 S.E.2d 300, 302 (1977) (no error in failing to define assault where instructions “included an adequate description of the facts constituting the assault for which the defendant was charged”); State v. Harris, 34 N.C.App. 491, 238 S.E.2d 642, 644 (1977) (failure to define assault not error where “the trial judge instructed the jury in connection with each offense submitted that to convict defendant it must find beyond a reasonable doubt ‘that the defendant assaulted [the victim] by intentionally shooting him with a pistol’ ”); State v. Springs, 33 N.C.App. 61, 234 S.E.2d 193, 195-96 (1977) (no error in not defining assault where trial court instructed jury that the state must prove “ ‘that the defendant assaulted [the victim] by intentionally and without justification or excuse shooting [the victim] in the upper left chest with a shotgun’ ”); cf. State v. Lineberger, 115 N.C.App. 687, 446 S.E.2d 375, 378 (1994) (trial court erred by not defining assault in response to jury’s question in case where defendant “shouldered” security officer); State v. Hickman, 21 N.C.App. 421, 204 S.E.2d 718, 719 (1974) (finding reversible error where trial court charged that the jury must find beyond a reasonable doubt that defendant “ ‘assaulted [the victim] with a knife’ ” but did not define assault). These cases reflect the general approach in North Carolina to instructing the jury in assault cases. Except in cases with multiple assault counts based on different conduct, see, e.g., State v. Spellman, 167 N.C.App. 374, 605 S.E.2d 696, 701-02 (2004), a single definition of assault typically is given, and that definition often is nothing more than a description of the charged conduct.[7]
This general practice of using a single definition of assault in the jury instructions is consistent with the approach recommended by North Carolina’s past and current pattern jury instructions. Under the pattern assault-on-a-female instruction that was in effect when Vinson pleaded guilty to that crime, the only required definition of assault was a description of the underlying conduct.[8] See N.C. Pattern Instructions — Crim. 208.70 (March 2002). Likewise, the current pattern instruction does not require that the trial court define assault beyond describing the underlying conduct. See N.C. Pattern Instructions— Crim. 208.70 (June 2011). And to the extent that a definition might be needed in a given case, the current pattern instructions do not recommend instructing the jury on all assault formulations as alterna *428 tive means of committing the crime of assault. Cf N.C. Pattern Instructions— Crim. 226.85 (April 2003) (including the alternate means identified in State v. Hartness in instruction for indecent-liberties offense). Instead, the pattern instructions for assault distinguish between the completed-battery and other formulations of the offense by calling for use of the most appropriate battery-based definition of assault in cases where a battery was involved and use of the most appropriate assault-based definition in cases where no battery was involved. See N.C. Pattern Instructions — Crim. 120.20 (June 2011).
In our view, the North Carolina trial courts’ general practice of instructing the jury using a single formulation of assault and the absence of any case law affirmatively supporting the alternate-means theory indicates that the alternate formulations operate as alternate elements or definitions of the offense. The pattern jury instructions, with their focus on the single form of assault implicated by the underlying facts, likewise indicate that the alternate formulations of assault are alternate elements, not alternate means.
This understanding of the assault formulations is supported by the North Carolina Court of Appeals’ decision in State v. Garcia, 146 N.C.App. 745, 553 S.E.2d 914 (2001). In Garcia, the court- vacated the defendant’s conviction for simple assault because the arrest warrant serving as the charging instrument,[9] which purported to charge the defendant with assault by show of violence, was deficient:
A warrant charging an assault by show of violence must allege: (1) a show of violence by the defendant; (2) accompanied by reasonable apprehension of immediate bodily harm or injury on the part of -the person assailed; (3) causing the victim to engage in a course of conduct which she would not otherwise have followed.
.... While the arrest warrant alleged an assault and listed facts supporting the elements of a show of violence ... and a deviation from her normal activities by the victim, the arrest warrant fails to allege any facts to support the element of reasonable apprehension of immediate bodily harm or injury on the part of the person assailed. As this is an essential element of an assault by show of violence, the arrest warrant, by omitting facts supporting the element of a “reasonable apprehension of immediate bodily harm,” fails to charge Defendant with the commission of an assault under this theory. Accordingly, as the arrest warrant failed to sufficiently charge Defendant with a crime ..., the trial court erred in failing to dismiss the charge as stated in the criminal pleading.
Id. at 915 (emphasis added; internal quotation marks and alteration omitted). Garcia thus clearly treats the show-of-violence formulation of assault not as an alternative means of committing the crime of assault, but as a separate crime with its own separate elements.[10] And if one of *429 the three formulations of assault under North Carolina law is a separate crime, we can conceive of no basis for treating the other formulations otherwise. Accordingly, we conclude that, for purposes of our inquiry under 18 U.S.C. § 922(g)(9), the attempted-battery and completed-battery forms of assault, just like the show-of-violence form at issue in Garcia, effectively create separate crimes with separate elements.
Our review of North Carolina law thus satisfies us that the various formulations of assault are alternate elements or definitions of the offense, not alternate means. While the dissent disagrees with our assessment of North Carolina law, our conclusion is also compelled by the approach for resolving the elements-versus-means question suggested by the Supreme Court in Descam/ps. In Descamps, the dissent expressed concern about the difficulty in distinguishing alternate means from alternate elements. See Descamps, 138 S.Ct. at 2297-98 (Alito, J., dissenting). In response, the majority stated that when an elements-versus-means question arises,
the documents we approved in Taylor and Shepard — i.e., indictment, jury instructions, plea colloquy, and plea agreement — would reflect the crime’s elements. So a court need not parse state law in the way the dissent suggests: When a state [offense is formulated] in the alternative, the court merely resorts to the approved documents and compares the elements revealed there to those of the generic offense.
Descamps, 133 S.Ct. at 2285 n. 2. And as we explain, the relevant document serves as an additional confirmation that the various assault formulations serve as alternate elements of the offense.
The document serving as the indictment in this case is a “Magistrate’s Order” finding probable cause for the detention of the defendant after a warrantless arrest. See N.C. Gen.Stat. §§ 15A-921(4), 15A-922(a). A Magistrate’s Order serving as a criminal pleading must include “a statement of the crime of which the person is accused,” N.C. Gen.Stat. § 15A-511(c)(3)(a), and must contain “[a] plain and concise factual statement in each count which, without allegations of an evidentiary nature, asserts facts supporting every element of a criminal offense and the defendant’s commission thereof with sufficient precision clearly to apprise the defendant ... of the conduct which is the subject of the accusation,” N.C. GemStat. § 15A-924(a)(5).
The factual statement contained in the Magistrate’s Order in this case states that Vinson “unlawfully and willfully did assault and strike FRANCIS DEANNA VINSON, a female person, by HITTING HER *430 ABOUT HER FACE WITH HIS OPEN HAND.” J.A. 38. These facts do not describe the attempted-battery or show-of-violence forms of assault, as there are no facts supporting the reasonable-apprehension elements of those crimes. See Garcia, 553 S.E.2d at 915; see also Roberts, 155 S.E.2d at 305 (describing elements of attempted-battery and show-of-violence forms of assault). The facts alleged in the Magistrate’s Order, however, are more than sufficient to support every element of the completed-battery form of assault, which has no reasonable-apprehension requirement. See Sudderth, 114 S.E. at 829 (“[A] battery is the actual unlawful infliction of violence on the person of another, and may be proved by evidence of any unlawful touching of [victim’s] person.... ” (internal quotation marks omitted)); see also State v. Thompson, 27 N.C.App. 576, 219 S.E.2d 566, 568 (1975) (“Where the evidence discloses an actual battery, whether the victim is put in fear is inappo-site.” (internal quotation marks omitted)).
The Magistrate’s Order thus charges Vinson with assault by completed battery, which establishes that the various formulations. of assault are alternate elements or definitions of the offense, which in turn establishes that the offense of assault on a female is divisible.[11] See Descamps, 133 S.Ct. at 2285 n. 2; see also United States v. Martinez, 762 F.3d 127, 133-34 (1st Cir.2014) (finding divisible a' Massachusetts assault and battery statute that covered “three types of battery: (1) harmful battery; (2) offensive battery; and (3) reckless battery” (internal quotation marks omitted)).
Because the offense is divisible, the modified categorical approach is applicable.[12] Under the modified categorical ap *431 proach, Vinson’s prior conviction qualifies as an MCDV: The relevant charging document establishes that Vinson was convicted of the completed-battery form of assault under North Carolina law. And as we have already explained, the crime of assault by completed battery categorically qualifies as an MCDV. The district court therefore erred by dismissing the indictment charging Vinson with unlawful possession of a firearm by a person convicted of an MCDV.
IV.
Accordingly, for the foregoing reasons, we hereby vacate the district court’s order dismissing the indictment against Vinson, and we remand with instructions that the district court reinstate the indictment.

VACATED AND REMANDED

. Although Descamps addressed a state crime defined by statute, we have since held that the Descamps analysis applies to state crimes whose elements are defined by case law rather than by statute. See United States v. Aparicio-Soria, 740 F.3d 152, 155 (4th Cir.2014) (en banc) ("[T]he categorical/modified categorical typologies apply equally to statutory and common law crimes.”); United States v. Hemingway, 734 F.3d 323, 333 (4th Cir.2013) ("[T]he Descamps divisibility analysis is applicable to the question of whether a common law offense constitutes a[ ] ... predicate crime.”).

. As the district court held, convictions under N.C. Gen.Stat. § 14-33(c)(2) do not categorically require the use or attempted use of physical force. See, e.g., State v. Allen, 245 N.C. 185, 95 S.E.2d 526, 529 (1956) (defendant's actions in repeatedly stopping his car a few feet away from the victim and staring at her while "moving the lower part of his body back and forth” sufficient to support conviction for assault); State v. McIver, 231 N.C. 313, 56 S.E.2d 604, 607 (1949) (affirming assault conviction based on defendant's “repeated obscene proposals”); State v. Williams, 186 N.C. 627, 120 S.E. 224, 225 (1923) (affirming assault convietion in case involving no use or attempted use of force and jury was instructed that, obscene comments made on three separate occasions by a 23-year-old man to 15-year-old girl could amount to "a display of force” sufficient for conviction).

. Our resolution of this question makes it unnecessary to consider whether, as the government contends, the attempted-battery form of assault also categorically qualifies as an MCDV.

. In order to directly answer the means-or-elements question, a case would likely need to involve a jury charge that included multiple formulations of assault and definitively treated those formulations either as elements requiring unanimity or as means not requiring unanimity. Cf. Omargharib v. Holder, 775 F.3d 192, 201 (4th Cir.2014) (Niemeyer, J., concurring) (discussing the difficulty in distinguishing alternate means from alternate elements).

. As will be discussed later, the majority in Descamps stated that a court need not “parse state law” to determine whether a criminal offense is divisible, but instead need only consult the indictment or other approved documents. Descamps v. United States, - U.S. -, 133 S.Ct. 2276, 2285 n. 2, 186 L.Ed.2d 438 (2013). In post -Descamps cases, however, this court has continued to evaluate state law when resolving the- divisibility question. See Omargharib, 775 F.3d at 198-99; United States v. Royal, 731 F.3d 333, 341 (4th Cir.2013), cert. denied, - U.S. -•, 134 S.Ct. 1777, 188 L.Ed.2d 605 (2014).

. In this regard, it is worth noting that while a battery always constitutes an assault, batr tery nonetheless retains a separate identity under' North Carolina law. See, e.g., N.C. Gen.Stat. Ann. § 14-31 (making it unlawful to “maliciously commit [in a secret manner] an assault and battery with any deadly weapon upon another by waylaying or otherwise, with intent to kill such other person” (emphasis added)); State v. Hill, 23 N.C.App. 614, 209 S.E.2d 528, 531 (1974) (“[T]he offense of secret assault contains five elements: (1) assault and battery, (2) deadly weapon, (3) intent to kill, (4) secret manner, and (5) malice.” (emphasis added)). That is, battery remains an independent crime, see, e.g., N.C. Gen.Stat. Ann. § 14-23.6(a) ("A person is guilty of the separate offense of battery on an unborn child if the person commits a battery on a pregnant woman....” (emphasis added)), one that can be established even in the absence of conduct that would satisfy the elements of attempted-battery or show-of-violence assault. See State v. Lassiter, 18 N.C.App. 208, 196 S.E.2d 592, 595 (1973) (in assault case involving completed battery, jury need not decide whether victim was in fear of bodily injury, as would be required to prove attempted-battery assault).

. As the dissent points out, this general approach is not universal. See State v. Garrison, 225 N.C.App. 170, 736 S.E.2d 610, 612 (2013) (using attempted-battery definition in case involving completed battery); State v. Carpenter, 155 N.C.App. 35, 573 S.E.2d 668, 674-75 (2002) (in case involving completed battery, court initially defined assault by describing charged conduct, but gave attempted-battery definition in response to jury question). Contrary to the dissent’s view, however, we do not believe that the existence of an outlying case or two prevents us from concluding that the assault formulations are alternate elements of the offense. Given all the other factors indicating that the assault formulations operate as alternate elements, Garrison and Carpenter do not undermine our ultimate conclusion.

. The dissent notes that the 2002 pattern instruction includes the traditional definition of attempted-batteiy assault. Because that definition is placed inside parentheses, however, use. of the definition is "[o]ptional” and the definition should be given "only when warranted by the evidence.” N.C. Pattern Instructions, "Guide to the Use of This Book,” at xx. The directions to "describe assault,” which are italicized and placed inside parentheses, refer to "facts that the judge must fill in.” Id. at xix (emphasis added).

. See N.C. Gen.Stat. § 15A-922(a) ("The citation, criminal summons, warrant for arrest, or magistrate’s order serves as the pleading of the State for a misdemeanor prosecuted in the district court, unless the prosecutor files a statement of charges, or there is objection to trial on a citation.”).

. The dissent contends that it is improper for us to rely on Garcia because Garcia is inconsistent with State v. Thorne, 238 N.C. 392, 78 S.E.2d 140 (1953), which found an indictment alleging that the defendant "violated the laws of North Carolina by assault on one Harvey Thomas” sufficient to support a charge of simple assault. Id. at 142 (alterations and internal quotation marks omitted). We disagree. Twenty years after Thome was decided, North Carolina passed the Criminal *429 Procedure Act, which requires that criminal pleadings contain "[a] plain and concise factual statement in each count which ... asserts facts supporting every element of a criminal offense and the defendant’s commission thereof with sufficient precision clearly to apprise the defendant or defendants of the conduct which is the subject of the accusation.” N.C. Gen.Stat. § 15A-924(a)(5). As the Supreme Court of North Carolina has recognized, § 15A-924(a)(5) "supplanted prior law,” such that pre-Act cases addressing the contents of indictments "are no longer controlling on this issue.” State v. Worsley, 336 N.C. 268, 443 S.E.2d 68, 73 (1994).
As the dissent notes, Worsley considered the sufficiency of a burglary indictment, and the common-law pleading rule that was "supplanted” in that case was more restrictive than the new rule set forth in § 15A-924(a)(5). See Worsley, 443 S.E.2d at 73. Contrary to the dissent's assertion, however, Worsley's recognition that the Act superseded prior inconsistent cases cannot be limited to burglary cases imposing stricter pleading requirements. Because Garcia was interpreting § 15A-924(a)(5), we believe it is proper to rely on it rather than Thome.

. The dissent complains that this analysis is circular, in that the general rule is that courts may look to charging documents only if the offense is divisible. Regardless of the dissent’s view of this approach, it is the approach dictated by the Supreme Court. See Descamps, 133 S.Ct. at 2285 n. 2 (explaining that “a court need not parse state law” to determine whether an offense involves alternate means or alternate elements, because “the documents we approved in Taylor and Shepard — i.e., indictment, jury instructions, plea colloquy, and plea agreement — w[ill] reflect the crime’s elements”). In any event, as our opinion makes clear, we do not rely solely on this approach but instead rely on it as confirmation of our understanding of North Carolina law. /

. We recognize that this court has previously determined that various assault offenses are not divisible, such that the modified categorical approach could not be applied. See, e.g., United States v. Aparicio-Soria, 740 F.3d 152, 154 (4th Cir.2014) (en banc) (holding that Maryland's resisting-arrest statute (which includes elements of assault) was not divisible for purposes of determining whether a conviction under that statute qualified as a "crime of violence” under U.S.S.G. § 2L1.2); Royal, 731 F.3d at 341 (holding that Maryland’s second-degree assault statute was not divisible for purposes of determining whether prior conviction qualified as a violent felony under the Armed Career Criminal Act). The conclusions in those cases that assault does not have alternative elements were based on Maryland law and thus are not inconsistent with our contrary conclusion in this case, which is based on North Carolina law.
Moreover, as we have explained, whether a statute or criminal offense is divisible depends on the existence of alternate elements and a matching category — that is, the alternate elements must create at least one category or form of an offense that matches up to the elements of the generic federal offense in question. See Omargharib, 775 F.3d at 197; Cabrera-Umanzor, 728 F.3d at 352. The generic federal offenses at issue- in Aparicio-Soria and Royal both required the underlying state offense to have as an element the use or attempted use of violent force. See Aparicio-Soria, 740 F.3d at 154-55; Royal, 731 F.3d at 341-42. Even if the completed-battery form of assault did have alternate elements under Maryland law, the offense still would not have been divisible in Aparicio-Soria or Royal because there would be no matching category, since battery can be predicated on an “offen *431 sive touching” not amounting to violent force. In this case, of course, the generic federal offense does not require violent force, and the completed-battery form of assault therefore does create a matching category.