INMAN, Judge.
 

 Defendant Don Randel Hudson, Jr. ("Defendant") appeals the order entered denying his motion for the return of his weapons surrendered under a domestic violence protective order. On appeal, Defendant argues that the trial court erred by: (1) finding that Defendant and Plaintiff Vicki Underwood ("Plaintiff") had been in a domestic relationship; (2) finding that Defendant committed an act "involving assault"; (3) considering evidence outside the record; and (4) permitting the District Attorney to argue against Defendant's motion.
 

 After careful review, because the crimes Defendant pled guilty to do not constitute "misdemeanor crimes of domestic violence" under
 
 18 U.S.C. § 922
 
 (g)(9), we reverse the trial court's order and remand.
 

 Factual and Procedural Background
 

 On 11 January 2012, Plaintiff filed for and obtained an
 
 ex parte
 
 domestic violence protection order ("
 
 ex parte
 
 order") against Defendant. In the
 
 ex parte
 
 order, the trial court found that Defendant placed Plaintiff in fear of imminent serious bodily injury and continued harassment by "charg[ing]" Plaintiff in her car, trying to run Plaintiff over, continuing to call and text Plaintiff after being released on bond for the criminal charges that resulted from the incidents, and threatening to kill her. The trial court also found that Defendant had tried to commit suicide in 1995, threatened suicide "two years ago," and that Defendant "states he doesn't want to live without her." In addition to concluding that Defendant had committed acts of domestic violence against Plaintiff, the trial court determined that his conduct required that he surrender his firearms as authorized by N.C. Gen.Stat. § 50B-3.1(a). Pursuant to the
 
 ex parte
 
 order, Defendant surrendered two firearms to the Wayne County Sheriff.
 

 On 16 April 2012, based on the conduct that led to the issuance of the
 
 ex parte
 
 order, Defendant pled guilty to communicating threats and misdemeanor stalking. Defendant was sentenced to 12 months of supervised probation.
 

 On 16 April 2012, the trial court dismissed Plaintiff's DVPO action, concluding that Plaintiff had failed to prove grounds for issuance of a regular DVPO.
 

 After completing his probation, on 13 August 2014, Defendant filed a motion for return of his firearms pursuant to N.C. Gen.Stat. § 50B-3.1(f). The matter came on for hearing before Judge Charles P. Gaylord, III on 25 August 2014. The trial court made only three findings of fact in the order, which was a form order on AOC-CV-320, Rev. 2/14, as follows:
 

 2. The defendant filed a motion to return weapons surrendered pursuant to a domestic violence protective order entered on (date) 01/11/2012.
 

 ...
 

 4. A motion to renew is not pending.
 

 ...
 

 12. Other: Finding of a personal relationship involving assault or communicating threats at sentencing on criminal matter on April 16, 2012.
 
 [1]
 

 Based entirely upon these findings, the trial court concluded that "the defendant is not entitled to the return of all firearms, ammunition, and gun permits surrendered to the sheriff pursuant to the domestic violence protective order entered in this case." Defendant timely appealed.
 
 [2]
 

 Standard of Review
 

 Our standard of review of an order for the return of firearms pursuant to N.C. Gen.Stat. § 50B-3.1(f) is "whether there is competent evidence to support the trial court's findings of fact and whether the findings support the conclusions of law and ensuing judgment. Findings of fact are binding on appeal if there is competent evidence to support them, even if there is evidence to the contrary."
 
 Gainey v. Gainey,
 

 194 N.C.App. 186
 
 , 188,
 
 669 S.E.2d 22
 
 , 24 (2008). The trial court "must (1) find the facts
 on all issues joined in the pleadings; (2) declare the conclusions of law arising from the facts found; and (3) enter judgment accordingly."
 

 Id.
 

 Analysis
 

 Defendant challenges the trial court's order on several bases, including the lack of findings showing that Defendant and Plaintiff were in a "domestic relationship," the lack of evidence that Defendant had committed an act "involving assault," and the manner in which the trial court conducted the hearing.
 

 N.C. Gen.Stat. § 50B-3.1(f) sets forth the inquiry which the trial court must make on a motion for return of firearms:
 

 Upon receipt of the motion, the court shall schedule a hearing and provide written notice to the plaintiff who shall have the right to appear and be heard and to the sheriff who has control of the firearms, ammunition, or permits. The court shall determine whether the defendant is subject to any State or federal law or court order that precludes the defendant from owning or possessing a firearm. The inquiry shall include:
 

 (1) Whether the protective order has been renewed.
 

 (2) Whether the defendant is subject to any other protective orders.
 

 (3) Whether the defendant is disqualified from owning or possessing a firearm pursuant to
 
 18 U.S.C. § 922
 
 or any State law.
 

 (4) Whether the defendant has any pending criminal charges, in either State or federal court, committed against the person that is the subject of the current protective order. The court shall deny the return of firearms, ammunition, or permits if the court finds that the defendant is precluded from owning or possessing a firearm pursuant to State or federal law or if the defendant has any pending criminal charges, in either State or federal court, committed against the person that is the subject of the current protective order until the final disposition of those charges. N.C.G.S. § 50B-3.1
 

 It is undisputed that Defendant was no longer subject to a protective order and that he had no pending criminal charges for acts committed against Plaintiff. The only question presented at the hearing was
 "whether the defendant is disqualified from owning or possessing a firearm pursuant to
 
 18 U.S.C. § 922
 
 or any State law." No argument was made before the trial court or this court that any state law would prevent Defendant from owning or possessing a firearm. Thus, the only question was whether Defendant was disqualified by federal law.
 

 At the hearing, the parties presented only legal arguments regarding whether Defendant was disqualified by federal law based upon Defendant's two convictions for communicating threats and misdemeanor stalking from 16 April 2012. No evidence was presented at the hearing other than the April 2012 judgments for misdemeanor stalking and communicating threats as reflected in the trial court's finding no. 5: "The Court finds this is an offense involving assault or communicating a threat, and the defendant had a personal relationship as defined by G.S. 50B-1(b) with the victim."
 

 Although the trial court's order did not clearly identify any legal basis for denying Defendant's motion, the Judge's comments when he announced his order in open court,
 
 [3]
 
 along with the fact that the only arguments presented focused on
 
 18 U.S.C. § 922
 
 , imply
 that the court denied the motion based upon that federal statute, which prohibits anyone who has been "convicted in any court of a 'misdemeanor crime of domestic violence' " from possessing a firearm.
 
 See also
 

 United States v. Castleman,
 
 --- U.S. ----, ----,
 
 134 S.Ct. 1405
 
 , 1409,
 
 188 L.Ed.2d 426
 
 , 432 (2014). A "misdemeanor crime of domestic violence" is defined as:
 

 (i) [ ] a misdemeanor under Federal, State, or Tribal law; and
 

 (ii) has, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon, committed by a current or former spouse, parent, or guardian of the victim, by a person with whom the victim shares a child in common, by a person who is cohabiting with or has cohabited with the victim as a spouse, parent, or guardian, or by a person similarly situated to a spouse, parent, or guardian of the victim.
 

 18 U.S.C. 921(a)(33)(A).
 

 To determine whether a prior conviction qualifies as a "misdemeanor crime of domestic violence," as it is defined by federal law, the courts first apply the categorical approach which "look[s] to the statute of [Defendant's] conviction to determine whether that conviction necessarily ha[d], as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon."
 
 Castleman,
 

 134 S.Ct. at 1413
 
 ,
 
 188 L.Ed.2d at 437
 
 . As explained by the Fourth Circuit, "[u]nder the categorical approach, we look only to the fact of conviction and the statutory definition of the prior offense ..., focus[ing] on the elements of the prior offense rather than the conduct underlying the conviction."
 
 United States v. Vinson,
 

 794 F.3d 418
 
 , 421 (4th Cir.2015) (alteration in original).
 

 The crime of communicating threats is set forth in N.C. Gen.Stat. § 14-277.1 (2013):
 

 A person is guilty of a Class 1 misdemeanor if without lawful authority:
 

 (1) He willfully threatens to physically injure the person or that person's child, sibling, spouse, or dependent or willfully threatens to damage the property of another;
 

 (2) The threat is communicated to the other person, orally, in writing, or by any other means;
 

 (3) The threat is made in a manner and under circumstances which would cause a reasonable person to believe that the threat is likely to be carried out; and
 

 (4) The person threatened believes that the threat will be carried out.
 

 Although the offense of communicating threats includes as an element that the defendant threatens the use of physical force, it does not by its elements require either the: (1) use of physical force; (2) attempted use of physical force; or (3) threatened use of a deadly weapon Thus, based on the categorical test utilized by
 
 Castleman,
 
 Defendant's conviction for communicating threats does not constitute a "misdemeanor crime of domestic violence" for purposes of
 
 18 U.S.C. § 922
 
 (g)(9).
 

 The Supreme Court has noted that for purposes of determining whether certain convictions constitute a "misdemeanor crime of domestic violence," courts may look at other documents, including the charging documents, jury instructions, and plea documents, under the modified categorical approach.
 
 Castleman,
 

 134 S.Ct. at 1414
 
 ,
 
 188 L.Ed.2d at 438
 
 . However, the modified categorical approach is only appropriate if the
 statute is " 'divisible'-
 
 i.e.,
 
 comprises multiple, alternative versions of the crime[.]"
 
 Descamps v. United States,
 
 --- U.S. ----, ----,
 
 133 S.Ct. 2276
 
 , 2284,
 
 186 L.Ed.2d 438
 
 , 452 (2013).
 

 Here, even if we were to assume, without deciding, that the communicating threats statute includes alternative elements as opposed to "alternate means of committing the same crime,"
 
 Vinson,
 

 794 F.3d at 425
 
 (distinguishing crimes that have alternate means of committing the same crime with crimes that have "alternate elements" which effectively create separate crimes, only the latter of which constitute "divisible" crimes), no version of the predicate offense would categorically constitute a "misdemeanor crime of domestic violence" by its elements-
 
 i.e.,
 
 no variant of the offense has as
 an element the use of physical force, the attempted use physical force, or the threatened use of a deadly weapon.
 
 See
 
 id.
 

 ("Taking the last part of the divisibility definition first, we must determine whether at least one of the categories into which the crime may be divided constitutes, by its elements, a qualifying predicate offense.");
 
 cf.
 

 Castleman,
 

 134 S.Ct. at 1413
 
 ,
 
 188 L.Ed.2d at 437
 
 (applying the modified categorical approach to a statute where one of the versions of the crime involved the use of physical force). Therefore, the trial court could not consider any outside documents to determine whether Defendant's conviction for communicating threats constitutes a "misdemeanor crime of domestic violence." And in fact, the record does not indicate that the trial court considered any additional documents or other evidence other than the judgment itself. Accordingly, Defendant's conviction for communicating threats does not constitute a "misdemeanor crime of domestic violence" and does not preclude Defendant from owning or possessing firearms under federal law.
 

 Similarly, Defendant's conviction for misdemeanor stalking also fails to qualify as a "misdemeanor crime of domestic violence." Section 14-277.3A(c) (2013) states that:
 

 A defendant is guilty of stalking if the defendant willfully on more than one occasion harasses another person without legal purpose or willfully engages in a course of conduct directed at a specific person without legal purpose and the defendant knows or should know that the harassment or the course of conduct would cause a reasonable person to do any of the following:
 

 (1) Fear for the person's safety or the safety of the person's immediate family or close personal associates.
 

 (2) Suffer substantial emotional distress by placing that person in fear of death, bodily injury, or continued harassment.
 

 Under the categorical approach and looking solely at the elements of the crime, misdemeanor stalking does not necessarily involve the: (1) use of physical force; (2) attempted use of physical force; or (3) threatened use of a deadly weapon. Furthermore, even if we were to assume, without deciding, that the crime of misdemeanor stalking is divisible, no possible iteration of the crime includes these elements. Therefore, the modified categorical approach is inapplicable, and this Court may not look to other documents to see whether the underlying conduct that gave rise to Defendant's conviction could implicate the "the use or attempted use of physical force, or the threatened use of a deadly weapon," a necessary showing for a crime to constitute a "misdemeanor crime[ ] of domestic violence" under
 
 Castleman.
 

 In sum, neither of Defendant's convictions constitutes a "misdemeanor crime of domestic violence," and federal law, specifically
 
 18 U.S.C. § 922
 
 (g)(9), does not preclude Defendant from having or possessing a firearm, even if Defendant and Plaintiff were in a "personal relationship" as defined by N.C. Gen.Stat. § 50B-1(b). Therefore, the trial court erred in ordering that Defendant was not entitled to have his firearms returned on this basis, and we reverse the trial court's order and remand for further proceedings. On remand, the trial court should hold a hearing to determine if the parties' circumstances have changed since the prior hearing in such a way that Defendant would now be disqualified from return of weapons for any of the reasons specifically listed in N.C. Gen.Stat. § 50B-3.1, and if not, the trial court should enter an order for return of the weapons. As noted earlier, because of this holding, it is not necessary to address Defendant's remaining arguments on appeal.
 

 Conclusion
 

 Based on our review of relevant statutes, case law, and the record on appeal, we reverse the trial court's order denying Defendant's motion to return his weapons surrendered under a DVPO and remand for further proceedings as described above.
 

 REVERSED AND REMANDED.
 

 Judges CALABRIA and STROUD concur.
 

 The trial court did NOT check any of the other potential findings listed on this form, including No. 6(a) which states that: "The defendant is disqualified from owning or possessing a firearm pursuant to
 
 18 U.S.C. § 922
 
 or any state law in that (state facts indicating why disqualified under federal or state law, e.g., convicted of a misdemeanor domestic violence crime or possession of a weapon of mass destruction, etc.)."
 

 On appeal, neither Plaintiff nor any attorney on behalf of the Wayne County Sheriff's Department filed an appellee brief. However, in every appellate pleading, Defendant served both the office of the District Attorney who appeared in court to argue against Defendant's motion and the Wayne County Clerk of Court. Therefore, based on the record before us, we cannot conclude that any failure of the State to respond to Defendant's brief was based on lack of notice.
 

 The rendition was as follows: "The finding of number five (on the criminal judgment) on this matter does give the court concern and at this time I am not going to be entering an order to return the weapons based upon the fact there was the finding in that, then I understand there may some Federal issues with that, you are certainly free to bring but at this time, I will not be ordering the return."