STATE v. JAMES CLIFFORD ROBERTS.

(Filed 20 June, 1967.)

1. **Assault and Battery § 4—**

Criminal assault is governed by the common law rules in this State, and G.S. 14-33 merely provides different punishments for various types of assault.

2. **Same—**

A criminal assault may be accomplished either by an overt act or by a show of violence which causes the person assailed reasonably to apprehend immediate bodily harm or injury so that he engages in a course of conduct which he would not otherwise have followed.

3. **Assault and Battery §§ 7, 14—**

Testimony of a witness that she saw defendant, a male over 18 years of age, talking to a four year old child and her companion, that she then saw the female child in defendant's arms, that defendant put the child down after the witness had hollered at him twice to do so, without any evidence that defendant made any movement to leave with the child, do any thing indicative of force or violence, or that the child was threatened, or that defendant molested or improperly held the child, *held* insufficient to be submitted to the jury on a charge of assault upon a female by a man or boy over 18 years of age.

4. **Assault and Battery § 4—**

A criminal intent not expressed by an overt act or an intentional attempt to do violence or injury to the person of another cannot constitute

an assault, since a person may not be convicted of a criminal offense solely for what may have been in his mind.

**5. Criminal Law § 101—**

　　Notwithstanding that the evidence must be considered in the light most favorable to the State on motion to nonsuit, there must be legal evidence of defendant's guilt of each essential element of the offense charged, amounting to more than a suspicion or conjecture, in order to overrule nonsuit.

Appeal by defendant from *Copeland, S.J.,* September 1966 Criminal Session of Durham.

Defendant was charged in a bill of indictment with assault upon one Debbie Pickett, a female, with intent to commit rape. He entered a plea of not guilty.

The State presented evidence substantially as follows:

Mrs. Mary Stanford testified that she lived on Higby Street in Durham, and that her yard backed up to the I-85 By-pass. Mr. and Mrs. Harry Pickett lived next door, and their yards adjoined with a wire fence running along the back of both lots. On 6 May 1966 she was taking care of a neighbor's little boy and had sent him next door to play in the Pickett's back yard with Debbie Pickett, aged four. When she went out to call the little boy around lunch time, she saw the defendant "talking to the children, down at the lower end of the Pickett yard, the end that faces toward the bank of the By-pass. Debbie and the little boy that I was keeping were talking to James Roberts. I saw James Roberts take Debbie Pickett up in his arms and was talking to her. I could not understand what he was saying, but he took her up in his arms over the fence and was talking to her. I ran out into my back yard where I could get a better view and then he talked to her, and I hollered and told him to put her back across the fence. He didn't hardly look at me. He was looking at Debbie and was talking to her. He was holding her up in his arms. After I hollered at him another time and told him to put the child back across the fence, he put her across the fence and then came to my back yard." On cross-examination Mrs. Stanford testified that she did not see the defendant actually pick Debbie up. "I did not notice the manner in which he picked the child up; when I looked, he had Debbie up in his arms, and that was when I ran into my back yard where I could get a better view. I did not see the actual picking up; when I looked back he had her in his arms. I didn's see him reach across the fence. He just kept holding her in his arms. He didn't make any movement away from me, or any movement that I could see. He was talking to her."

Mrs. Stanford further testified that she asked defendant his name,

and he told her. She then asked him what he was doing, and he told her it was none of her business and to go to h . . ., and then left.

R. G. Morris, a detective for the Durham Police Department, testified that he investigated the matter before the court, and that he arrested defendant on 10 May 1966. Upon defendant's objection to testimony by the officer as to statements made by defendant after his arrest, the jury was excused and the trial court conducted a *voir dire* to determine the competency of the evidence. Upon findings of fact made, the trial court concluded that the testimony was competent, and the jury returned. Officer Morris then testified that defendant related to him his activities of that day, which led him to be along the side of the By-pass near the Pickett's yard. "He stated that as he started down the bank of Ellerbee Creek, that he heard this child's voice; that when he heard this child's voice, the sound of the child's voice made this terrific urge come on him. . . . He did not say anything to me that he had done to the child other than hold her in his arms. When I asked him what he was doing picking this little child up or what he intended to do, he told me he didn't know. . . . I asked him why he went over there and picked up this little girl. He stated that the voice of the child gave him this uncontrollable urge. (At this point defendant objected to the testimony and the objection was overruled.) He never did go into explaining this as to what the urge was. He stated that with her, with Debbie, he had this sex problem, but that he thought he was controlling it." (At this point defendant's objection and motion to strike were allowed. Defendant excepted to the failure of the court to instruct the jury not to consider the stricken portion of his testimony.) Officer Morris further testified that defendant had told him he was eighteen years old and his birth date was 13 January 1948.

At the close of the State's evidence defendant moved for judgment of nonsuit. The motion was allowed as to the charge of assault with intent to commit rape and denied as to the lesser included offense of assault on a female, he being a male over the age of eighteen years. Defendant offered no evidence and renewed his motion for judgment of nonsuit. The motion was denied. The jury returned a verdict of guilty of assault on a female, he being a male over the age of eighteen years. Judgment was entered on the verdict. Defendant appealed.

*Attorney General Bruton, Deputy Attorney General Lewis, Assistant Attorney General Rosser, and Trial Attorney Webb for the State.*

*Alwood B. Warren for defendant.*

BRANCH, J. Defendant contends the court erred in refusing to grant his motion for nonsuit as to assault on a female.

There is no statutory definition of assault in North Carolina, and the crime of assault is governed by common law rules. G.S. 14-33 does not create a new offense as to assaults on a female, but only provides for different punishments for various types of assault. *State v. Lefler,* 202 N.C. 700, 163 S.E. 873; *State v. Jones,* 258 N.C. 89, 128 S.E. 2d 1; G.S. 4-1.

This Court generally defines the common law offense of assault as "an overt act or an attempt, or the unequivocal appearance of an attempt, with force and violence, to do some immediate physical injury to the person of another, which show of force or menace of violence must be sufficient to put a person of reasonable firmness in fear of immediate bodily harm." 1 Strong's N. C. Index, Assault and Battery, § 4, p. 182; *State v. Davis,* 23 N.C. 125; *State v. Daniel,* 136 N.C. 571, 48 S.E. 544; *State v. Gay,* 224 N.C. 141, 29 S.E. 2d 458; *State v. McIver,* 231 N.C. 313, 56 S.E. 2d 604.

This common law rule places emphasis on the intent or state of mind of the person accused. The decisions of the Court have, in effect, brought forth another rule known as the "show of violence rule," which places the emphasis on the reasonable apprehension of the person assailed. The "show of violence rule" consists of a show of violence accompanied by reasonable apprehension of immediate bodily harm or injury on the part of the person assailed which causes him to engage in a course of conduct which he would not otherwise have followed. This rule has been extended to many cases of assault on a female. Thus, there are two rules under which a person may be prosecuted for assault in North Carolina. See 36 N. C. L. Rev., Show of Violence Rule in North Carolina, p. 198.

Although assault has been defined by this Court many times, the extreme difficulty of applying the facts to the law was recognized in the case of *State v. Hampton,* 63 N.C. 13, when the Court stated: "It would seem that there ought to be no difficulty in determining whether any given state of facts amounts to an assault. But the behavior of men towards each other varies by such mere shades, that it is sometimes very difficult to characterize properly their acts and declarations." Eighty-eight years later, the Court, speaking through Parker, J. (now C.J.) in the case of *State v. Allen,* 245 N.C. 185, 95 S.E. 2d 526, said: "The rules of law in respect to assaults are plain, but their application to the facts is sometimes fraught with difficulty. Each case must depend upon its own peculiar circumstances."

In answering the question presented, we must, of necessity, review the pertinent cases on assault.

In the case of *State v. Hampton, supra,* prosecutor was going down steps from a courtroom and defendant, being within striking distance, clenched his right hand and said: "I have a good mind to hit you," thereby causing prosecutor to take another stairway and direction. The Court held this to be an assault.

*State v. Shipman,* 81 N.C. 513, holds that where a defendant, using threatening language against prosecutor, advanced on him with knife in hand and prosecutor withdrew with the statement, "I shall have to go away," the defendant was properly convicted of an assault. See also *State v. McAfee,* 107 N.C. 812, 12 S.E. 435; *State v. Newton,* 251 N.C. 151, 110 S.E. 2d 810.

The case of *State v. Williams,* 186 N.C. 627, 120 S.E. 224, presents evidence that a 23-year old man on several occasions made indecent proposals to a 15-year old girl on public streets, causing her to flee in a direction other than her destination, and causing fear and anxiety on her part. The Court held this to be an assault.

The Court in the Per Curiam opinion of *State v. Silver,* 227 N.C. 352, 42 S.E. 2d 208, held that in a prosecution for assault on a female, where the evidence tended to show that defendant had asked prosecutrix an improper question, unaccompanied by any show of violence, threat, or any display of force, defendant's motion for nonsuit should have been granted.

In the case of *State v. Johnson,* 264 N.C. 598, 142 S.E. 2d 151, defendant's wife, after separation, came home to get some personal belongings. There was an argument and defendant came toward his wife with open knife in his hand. She told defendant to let her out and he immediately unlocked the door and complied. She threw lye on him and left. Holding the evidence insufficient to be submitted to the jury, the Court stated:

> " 'In order to constitute a criminal assault there must be an overt act or an attempt, or the unequivocal appearance of an attempt, with force and violence, to do some immediate physical injury to the person of another, which show of force or menace of violence must be sufficient to put a man of reasonable firmness in fear of immediate bodily harm.' 1 Strong: N. C. Index, Assault and Battery, § 4, p. 182 (Supp., p. 60)."

In *State v. Ingram,* 237 N.C. 197, 74 S.E. 2d 532, the evidence tended to show that defendant drove his automobile along a public highway and "leered" at prosecutrix who was walking some distance away on a dirt road. She heard defendant's car stop as she was pass-

ing through a wooded area, and she ran about 215 feet until she was out of the woods. She then saw defendant walking fast about 70 feet away. Defendant stopped, and she continued to her destination. The Court held the evidence was insufficient to be submitted to the jury on the question of assault on a female, stating:

> "So that it seems well settled that in order to constitute the criminal offense of assault there must be an overt act or an attempt, or the unequivocal appearance of an attempt, with force and violence, to do some immediate physical injury to the person of another. . . .
>
> "The display of force or menace of violence must be such as to cause the reasonable apprehension of immediate bodily harm. *Dahlin v. Fraser,* 206 Minn. 476." . . .
>
> "There was here no overt act, no threat of violence, no offer or attempt to injure."

Again considering assault on a female, in *State v. Gough,* 257 N.C. 348, 126 S.E. 2d 118, there was evidence that defendant, by false representations, induced two young girls to go with him in his automobile. He stopped the automobile in a wooded area in the nighttime, telling them if they would be nice to him and cooperate with him, they would not get hurt, and he would pay them nice. Whereupon, the girls jumped from the automobile and ran to a farm house where they asked for and received help. Holding there was sufficient evidence of kidnapping, but that there was not sufficient evidence to submit the question of the lesser offense of assault on a female to the jury, the Court said:

> "There is no evidence here of threatening words or violence menaced, nor is there any overt act or an attempt, with force and violence, to do physical injury to Elaine Saunders. This Court said in *S. v. Ingram,* 237 N.C. 197, 74 S.E. 2d 532:
>
>> 'So that it seems well settled that in order to constitute the criminal offense of assault there must be an overt act or an attempt, or the unequivocal appearance of an attempt, with force and violence, to do some immediate physical injury to the person of another.' "

The evidence in the instant case shows that witness saw defendant talking to the two children. She then saw the child in defendant's arms. Defendant made no movement to leave, nor did he offer any overt movement indicative of force or violence. Upon being twice told by the witness to put the child down, he placed her in the yard. There was no evidence that the child was frightened or suffered

any fear or apprehension as a result of the acts of defendant, or that defendant molested or improperly held the child. It may have been that the sound of the child's voice created an abnormal sexual desire in the apparently disturbed mind of the defendant. On the other hand, he may have had the natural instinct that many moral men have to affectionately hold a child. It is, however, clear there was no threat of violence and no offer or attempt to injure. "We cannot convict him of a criminal offense solely for what may have been in his mind. Human law does not reach that far." *State v. Ingram, supra.* Evidence of a desire is not sufficient. There must be evidence of an intentional attempt to do violence or injury to the person of another. *State v. Davis,* 23 N.C. 125.

Considering the evidences most favorable to the State and giving the State the benefit of every reasonable intendment and inference to be drawn therefrom, as we must upon considering motion for nonsuit, *State v. Corl,* 250 N.C. 252, 108 S.E. 2d 608, but being mindful that to convict a person of a criminal offense there must be legal evidence of the commission of the offense charged, something more than is sufficient to raise a suspicion or conjecture, *State v. Prince,* 182 N.C. 788, 108 S.E. 330, we hold that the trial court erred in denying defendant's motion for judgment of nonsuit.

Reversed.