IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA19-848

Filed: 19 May 2020

Guilford County, No. 16 CRS 89906

STATE OF NORTH CAROLINA

v.

MATTHEW ROBINSON RUSSELL, Defendant.

Appeal by defendant from judgment entered 25 January 2019 by Judge Michael D. Duncan in Guilford County Superior Court. Heard in the Court of Appeals 29 April 2020.

> *Attorney General Joshua H. Stein, by Assistant Attorney General Deborah Greene, for the State.*

> *Attorney Jon W. Myers for defendant-appellant.*

BERGER, Judge.

Matthew Robinson Russell ("Defendant") appeals his conviction of assault inflicting serious bodily injury ("AISBI"), alleging the trial court erred when it (1) denied Defendant's motion for a jury instruction on consent; and (2) declined to sanction the State for an alleged discovery violation. We disagree.

Factual and Procedural Background

In 2016, Defendant and his girlfriend, Jackie Neely ("Neely"), ended their relationship. Shortly thereafter, Daniel Leonard ("Leonard") and Neely began a relationship.

On November 10, 2016, Leonard and Neely met friends at a local bar in Greensboro. Defendant was at the bar, and at some point, Defendant asked Leonard to go outside and talk. During the exchange, Leonard told Defendant to hit him. Defendant then struck Leonard, breaking his jaw in two places. According to one witness, the punch was not thrown immediately after Leonard's statement, but, rather, it came "kind of out of nowhere." As a result of his injuries, Leonard underwent surgery to repair the damage to his jaw. After Defendant hit Leonard, Defendant entered the bar and then left in a car.

Defendant's case came on for trial on January 24, 2019. A Guilford County jury found Defendant guilty of AISBI, and he was placed on supervised probation. Defendant appeals, arguing the trial court erred when it (1) denied Defendant's motion for a jury instruction on consent; and (2) declined to sanction the State for an alleged discovery violation. We disagree.

Analysis

I.      Jury Instruction

Defendant first argues that the trial court erred when it denied his motion for North Carolina Pattern Jury Instruction ("PJI") 120.20 to be given to the jury when

2

Leonard's consent to the assault was raised during the course of the trial. Defendant further argues that absence of consent is a required element of AISBI.

"A trial judge is required by N.C.G.S. § 15A-1231 and N.C.G.S. § 15A-1232 to instruct the jury on the law arising from the evidence. This includes instruction on the elements of the crime." *State v. Bogle*, 324 N.C. 190, 195, 376 S.E.2d 745, 748 (1989). If a request for a special instruction is made, "which is correct in itself and supported by evidence, the court must give the instruction at least in substance." *State v. Lamb*, 321 N.C. 633, 644, 365 S.E.2d 600, 605-06 (1988) (citation and quotation marks omitted). "Whether a jury instruction correctly explains the law is a question of law, reviewable by this Court *de novo*." *State v. Voltz*, 255 N.C. App. 149, 156, 804 S.E.2d 760, 765 (2017) (citation and quotation marks omitted). "Instructions that as a whole present the law fairly and accurately to the jury will be upheld." *State v. Cagle*, ___ N.C. App. ___, ___, 830 S.E.2d 893, 897 (2019) (citations and quotation marks omitted), *cert. denied*, 838 S.E.2d 185 (2020).

"There is no statutory definition of assault in North Carolina, and the crime of assault is governed by common law rules." *State v. Roberts,* 270 N.C. 655, 658, 155 S.E.2d 303, 305 (1967). "An [a]ssault is an intentional attempt, by violence, to do an injury to the person of another." *State v. Davis*, 23 N.C. 98, 99 (1840). "Th[e] common law rule [of assault] places emphasis on the intent or state of mind of the person accused." *Roberts*, 270 N.C. at 658, 155 S.E.2d at 305.

A defendant may be convicted of AISBI if the State proves beyond a reasonable doubt that the defendant "assault[ed] another person and inflict[ed] serious injury." N.C. Gen. Stat. § 14-32.4(a) (2019). Again, the statute does not define assault, and we must refer to the common law definition. It is undisputed that Defendant intentionally struck Leonard, thereby causing serious bodily injury. Defendant argues on appeal, however, that absence of consent is an element of assault, and the trial court erred when it declined to so instruct the jury.

As set forth above, our Supreme Court has defined assault as "an intentional attempt, by violence, to do an injury to the person of another." *Davis*, 23 N.C. at 99. This definition has stood the test of time. In addition, our Supreme Court has instructed this Court that the focus of our analysis when trying to determine if an assault occurred should be "on the intent or state of mind of the person accused." *Roberts*, 270 N.C. at 658, 155 S.E.2d at 305. We see nothing in the common law definition of assault that supports Defendant's argument concerning consent.

Furthermore, because "there is no consent on the part of the State, which is the complaining party in a criminal prosecution and represents the public interest invaded by the crime itself, the consent of the [victim] is ordinarily no bar to a criminal prosecution." Restatement (Second) of Torts § 892C cmt. b (1979). This case highlights a foundational principle that undergirds our criminal law: an offense against a person may also constitute an offense against the interest of the community

4

at large. Defendant concedes in his brief that "the vast majority of jurisdictions hold that harmful actions, even if consented to, violate public policy[.]"

In the case of violent crimes, the State's interest is implicated by a defendant's conduct in breaching the peace. It is for this reason that a victim's consent to a violent criminal offense cannot absolve a defendant of criminal liability. While a victim may release a defendant from civil liability, a victim cannot consent to the commission of a criminal offense and thereby bind the hands of the State. *See State v. Bass*, 255 N.C. 42, 45, 120 S.E.2d 580, 582 (1961) (parties could not consent to the crime of mayhem because the conduct was "an atrocious breach of the king's peace" at common law); *State v. Fritz*, ___ N.C. ___, ___, 45 S.E. 957, 958 (1903) (dueling was "an aggravated form of affray, and under such indictment the parties [could] be convicted of a mutual fighting by consent."); *State v. Allen & Royster*, ___ N.C. ___, ___, 4 Hawks 356, ___ (1826) (holding that individuals may be convicted of assault, even if consented to, when occurring "in a public place, to the terror of the citizens.").[1]

---

[1] The State cites authority from across the country on this point: *State v. Mackrill*, 345 Mont. 469, 476, 191 P.3d 451, 457 (2008) ("[I]t is against public policy to permit a person purposely or knowingly to cause serious bodily injury to another, even though that conduct and resulting harm were consented to."); *State v. Fransua*, 85 N.M. 173, 174, 510 P.2d 106, 107 (N.M. App. 1973) ("[A] state enacts criminal statutes making certain violent acts crimes for at least two reasons: One reason is to protect the persons of its citizens; the second, however, is to prevent a breach of the public peace. While we entertain little sympathy for either the victim's absurd actions or the defendant's equally unjustified act of pulling the trigger, we will not permit the defense of consent to be raised in such cases. Whether or not the victims of crimes have so little regard for their own safety as to request injury, the public has a stronger and overriding interest in preventing and prohibiting acts such as these." (citation omitted)); *State v. Brown*, 143 N.J. Super. 571, 572, 364 A.2d 27, 28 (N.J. Super. Ct. Law Div. 1976) ("[W]hile the consent of the victim may relieve defendant of liability in tort, this same

Because absence of consent is not an element of assault, and thus not an element of AISBI, the trial court did not err when it declined to instruct the jury on consent.[2]

II.    Discovery

Defendant next contends that the trial court erred when it declined to sanction the State for failure to provide defense counsel with the fee statement of an expert witness. Defendant contends that not having this information prevented him from cross-examining the expert. We disagree.

N.C. Gen. Stat. Section 15A-903 provides that upon request, the State must provide "notice to the defendant of any expert witnesses that the State reasonably expects to call as a witness at trial."[3] N.C. Gen. Stat. § 15A-903(a)(2) (2019). Defendant requested information regarding "[a]ny and all consideration or promises

---

consent has been held irrelevant in a criminal prosecution, where there is more at stake than a victims rights."), *aff'd per curiam*, 154 N.J. Super. 511, 381 A.2d 1231 (N.J. Super. Ct. App. Div. (1977).

[2] Our concurring colleague contends that there was insufficient evidence from which the jury could infer that the victim consented at all. It is true that based on all the testimonies from the victim and the witnesses, there is a strong inference that the victim was not actually inviting Defendant to hit him, but rather was trying to de-escalate the situation. However, because there was some evidence from which the jury could infer consent, the trial court had to consider the issue of Defendant's requested instruction. It is not for us, or the trial judge, to assign weight and credibility to each witness's testimonies. That function belongs to the jury alone.

[3] Defendant's counsel failed to instruct this Court on how Defendant's rights under Section 15A-903 were violated beyond a mere cursory discussion of the statute. Defendant's counsel did not cite or discuss the statute providing the right Defendant alleges was violated beyond the section heading of the assignment of error. Further, Defendant's counsel cites authority that (1) does not support Defendant's position and (2) does not stand for the proposition for which it is cited. Defendant's counsel is reminded that compliance with the Appellate Rules is a minimum standard for a case to be reviewed by this Court, and "[i]t is not the duty of this Court to supplement an appellant's brief with legal authority or arguments not contained therein." *Goodson v. P.H. Glatfelter Co.*, 171 N.C. App. 596, 606, 615 S.E.2d 350, 358 (2005); N.C. R. App. P. 28 (2019).

of consideration given to or made on behalf of government witnesses" including "witness fees" in a motion in limine on January 18, 2019. The State failed to disclose information related to the expert's witness fee prior to trial as requested by Defendant and disclosed this failure to the court at the sentencing portion of the trial. The trial court determined that the State's failure to disclose was an "honest mistake."

It is unclear from the record that the trial court found that a discovery violation had occurred. Even if we assume the trial court's statement that the failure to disclose was an "honest mistake" was a finding of a discovery violation, we find no prejudice to Defendant and no error.

Where "the prosecutor's actions constitute[] a discovery violation, the trial judge still retain[s] broad discretion to determine if sanctions [are] appropriate." *State v. Nolen*, 144 N.C. App. 172, 184, 550 S.E.2d 783, 790 (2001). The trial court's decision to impose, or not impose, sanctions for abuse of discovery orders "will not be reversed absent a showing of abuse of that discretion." *State v. Aguilar-Ocampo*, 219 N.C. App. 417, 422, 724 S.E.2d 117, 121-122 (2012) (citation and quotation marks omitted). "Abuse of discretion results where the court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." *State v. Foster*, 235 N.C. App. 365, 377, 761 S.E.2d 208, 217 (2014) (citations and quotation marks omitted). In addition, the trial court is not required "to make specific findings on the record that it considered sanctions before

7

determining not to impose sanctions." *State v. Jones*, 151 N.C. App. 317, 325, 566 S.E.2d 112, 117 (2002).

Here, the expert's testimony was corroborative testimony. It served only to provide the jury with a clearer picture of the injuries sustained by Leonard, the surgery required as a result of those injuries, and pain levels Leonard endured. Defendant has not demonstrated that there was a reasonable probability of a different result had he been allowed to question the expert about his $875.00 witness fee.

In addition, N.C. Gen. Stat. Section 15A-910 requires that prior to *imposing* sanctions the trial court "shall consider both the materiality of the subject matter and the totality of the circumstances surrounding an alleged failure to comply with this Article or an order issued pursuant to this Article." N.C. Gen. Stat. § 15A-910(b) (2019). Here, the trial court determined that no sanctions were appropriate, and, thus, was not required to "make specific findings on the record that it considered sanctions." *Jones*, 151 N.C. App. at 325, 566 S.E.2d at 117.

The trial court's determination that no sanctions were appropriate was based upon the fact that the prosecutor's error was an "honest mistake." There is nothing in the record from which we could determine this decision was so arbitrary that it could not have been the result of a reasoned decision. Thus, the trial court did not err when it declined to sanction the State.

## Conclusion

For the foregoing reasons, Defendant received a fair trial, free from error.

NO ERROR.

Judge DILLON concurs.

Judge HAMPSON concurs in separate opinion.

No. COA19-848 – *State v. Russell*


HAMPSON, Judge, concurring in result.


I concur in the result reached by the majority. My analysis, however, differs on the question of whether the trial court erred in failing to provide a specific instruction to the jury on the victim's alleged consent to the assault inflicting serious bodily injury.

I conclude, like the majority, the trial court did not err in declining to give the instruction requested by Defendant. In my analysis, though, I would simply hold the evidence did not support submission of the instruction relating to the victim's consent to the jury. *See State v. Brown*, 182 N.C. App. 115, 117, 646 S.E.2d 775, 777 (2007) ("A trial court must give a requested instruction if it is a correct statement of the law *and supported by the evidence*." (emphasis added) (citation omitted)). The victim here certainly did not consent to the assault by Defendant inflicting serious bodily injury. Indeed, it is arguable whether the evidence could support a finding the victim actually consented to *any* assault whatsoever.[4]

---

[4] The majority takes issue with this assertion. However, contrary to the majority's characterization, this does not mean I think there is "insufficient evidence" to go to the jury as to consent to any assault. Rather, I mean what I say: the evidence is arguable as to consent to any assault—or to put it in the parlance of the majority: "there is a strong inference that the victim was not actually inviting Defendant to hit him." The real gist of the majority's critique is that my analysis somehow invades the province of the jury to weigh the evidence of consent. Not so. It is a judicial function to determine whether the evidence supports submission of a particular instruction to the jury. Here, on the facts of this case, the evidence does not support a finding the victim consented to assault inflicting serious bodily injury supporting Defendant's requested instruction. In any event, under the

*Hampson, J., concurring in result.*

The evidence reflects: Defendant and the victim were acquaintances. Defendant discovered the victim at a bar with Defendant's ex-girlfriend and others. Defendant became angry, and he and the victim stepped out of the bar "to talk." Defendant was visibly agitated. The victim testified: "We had a conversation. We walked out. I started the conversation. I told him I was sorry for what I did. I know you're mad. If you want to hit me, hit me, but this is not the way we need to solve this issue. We're both adults." The victim further testified the argument continued and Defendant subsequently blindsided the victim with a punch that broke the victim's jaw in two places.

Two eyewitnesses testified to hearing the victim invite Defendant to "hit me." However, the first eyewitness testified: "[Defendant] was angry, yelling about a situation . . . [the victim] was trying to talk it out. . . . I believe he did say let's talk about it, and even after he did get hit, he did still try to talk about it. But he never showed any aggression in return." The second eyewitness testified the victim "said hit me at least twice, and then the arguing continued." The second eyewitness confirmed: "[the victim] said it multiple times, and there was arguing in between. So it wasn't immediate." According to this second eyewitness, when the punch occurred, "[i]t was kind of out of nowhere." The second eyewitness recalled her impression: "I

---

majority opinion, consent may *never* be a jury issue in a criminal assault case—a far less narrow result with potentially far-reaching ramifications well beyond a bar fight.

mean I wasn't in fear of either. I didn't think that they would actually get into an altercation." Thus, put in context, the evidence reflects the victim was not inviting an assault but attempting to deescalate the situation by trying to convince Defendant to talk through the disagreement.

Therefore, because the evidence did not, in fact, reflect the victim's consent to being sucker punched by Defendant resulting in serious bodily injury, the trial court did not err in declining to provide the instruction requested by Defendant. *See id.* (citation omitted). Consequently, I agree there was no error in Defendant's trial. Accordingly, I concur in the result.