IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA19-518

 Filed: 16 June 2020

Wake County, Nos. 17 CRS 221499, 221501

STATE OF NORTH CAROLINA

 v.

QUINTON DANTE ENGLISH

 Appeal by Defendant from judgments entered 21 December 2018 by Judge

Rebecca W. Holt in Wake County Superior Court. Heard in the Court of Appeals

26 May 2020.

 Attorney General Joshua H. Stein, by Assistant Attorney General Ellen A.
 Newby, for the State-Appellee.

 Leslie Rawls for Defendant-Appellant.

 COLLINS, Judge.

 Defendant Quinton Dante English appeals judgments entered upon jury

verdicts of guilty of felony first-degree kidnapping, misdemeanor simple assault,

misdemeanor unauthorized use of a vehicle, and two counts of misdemeanor assault

with a deadly weapon. On appeal, Defendant argues that the trial court erred by

denying his motion to dismiss the charge of first-degree kidnapping and one of the

counts of assault with a deadly weapon, on grounds that the State failed to present

sufficient evidence of the offenses. We discern no error by the trial court.
 STATE V. ENGLISH

 Opinion of the Court

 I. Procedural History

 Defendant was indicted on 9 January 2018 for first-degree kidnapping and

assault by strangulation. On 11 January 2018, Defendant was indicted for larceny

of a motor vehicle, assault with a deadly weapon inflicting serious injury, and two

counts of assault with a deadly weapon with intent to kill.

 A jury trial began on 17 December 2018. The jury found Defendant guilty of

felony first-degree kidnapping, misdemeanor simple assault as a lesser-included

offense of assault by strangulation, misdemeanor unauthorized use of a motor vehicle

as a lesser-included offense of larceny of a motor vehicle, and two counts of

misdemeanor assault with a deadly weapon as a lesser-included offense of assault

with a deadly weapon with intent to kill. The jury found Defendant not guilty of

assault with a deadly weapon inflicting serious injury.

 The parties stipulated that Defendant was a prior record level III for

sentencing of the misdemeanor convictions and a prior record level IV for sentencing

of the felony conviction. The trial court consolidated the convictions of felony first-

degree kidnapping, misdemeanor simple assault, and misdemeanor unauthorized use

of a motor vehicle into one judgment, sentencing Defendant to 110 to 144 months’

imprisonment. The trial court consolidated the convictions of two counts of

misdemeanor assault with a deadly weapon into another judgment, sentencing

 -2-
 STATE V. ENGLISH

 Opinion of the Court

Defendant to two consecutive sentences of 150 days. The judgments were entered on

21 December 2018.

 Defendant gave oral notice of appeal in open court.

 II. Factual Background

 The State’s evidence at trial tended to show the following: Defendant and

Evelyn Gonzalez were in a relationship for approximately two years, which involved

frequent arguments and Defendant’s physical abuse of Gonzalez. Although Gonzalez

did not report several incidents of physical abuse, she called the police on one occasion

when Defendant hit her, pulled her hair, and choked her.

 The two argued during the weekend of 4 and 5 November 2017. After Gonzalez

blocked Defendant’s phone numbers on 5 November 2017, Defendant sent Gonzalez

private messages on Facebook. Gonzalez replied to a few of the messages that day,

but she stopped responding while she was at work. When Gonzalez left work at 5:00

p.m., she walked to her car, which she had left unlocked in the parking lot near the

back of the building. Just as Gonzalez entered the car, Defendant sat up in the back

seat. Defendant testified that there had been previous times he had waited for

Gonzalez in either the driver’s or passenger’s seat of her car to pick her up from work,

but on this day, he was lying down in the back seat waiting for her. Gonzalez asked

Defendant what he was doing in her car, and they began to argue. Defendant was

holding a red knife.

 -3-
 STATE V. ENGLISH

 Opinion of the Court

 Defendant took Gonzalez’s phone from her and began looking at her messages.

Gonzalez hesitated to give it to him but did not refuse because she was afraid

Defendant would get angry like he had before, when Defendant “would start

screaming, getting abusive, verbal and physical” if Gonzalez did not give him access

to her phone. Defendant became angry, called Gonzalez a liar, and said that she did

not love him. Gonzalez testified, “I knew he was about to do what he always does

when he got mad,” which is to “[p]ut his hands on me” and “[m]ake me stay in the car

until he is not mad anymore.”

 Defendant told Gonzalez to drive the car. When she refused, Defendant got

angry, put his arm around her neck, and “started choking” her. Gonzalez had

difficulty breathing. Defendant brandished the knife, held it to her right side, and

applied force to her neck until she started driving the car. Gonzalez was afraid.

 In order to try to get out of the car, Gonzalez pulled quickly into a gas station

up the street from where her car had been parked. A witness estimated that the car

was travelling about 30 or 40 miles an hour when the driver abruptly stopped in front

of a gas pump, and the tires screeched. Gonzalez told Defendant that she wanted to

go inside the convenience store to get a drink, but Defendant told her that she could

not get out of the car, that they were not stopping, and to keep driving. Gonzalez

noticed people nearby, so she opened the door and screamed for help. Defendant

leaned over the seat, started to choke her, and punched her. Gonzalez testified, “It

 -4-
 STATE V. ENGLISH

 Opinion of the Court

was a lot, and he was like he had his hand around my neck and he was punching like

on the top of my head and I started to get lightheaded.” While Gonzalez tried to get

out of the car, Defendant tried to close the door, told Gonzalez to put her foot on the

pedal, and screamed at her, “Bitch, drive.”

 Jacob Capps and Jackson Capps, two brothers whom Gonzalez had never seen

before, pulled up on motorcycles to a gas pump at the same station, noticed a car

pulling into the gas station at a speed of approximately 30 to 40 miles per hour, and

heard the “horrific” sounds of a female screaming. Jacob testified that Defendant was

in the back seat of the car, “over the center console with his arm around [Gonzalez’s]

neck. She was crying. It looked like she had been beaten.” Gonzalez’s neck was red,

her face was swollen and bruised, and she was “screaming, crying, pleading for help.”

The Capps brothers approached the car to try to help Gonzalez. Jacob started hitting

Defendant, and Gonzalez was able to slide underneath Defendant, get out of the car,

and run into the gas station. The convenience store clerk called 911 and instructed

Gonzalez to go in the freezer until the doors to the station were locked.

 Jacob entered the back seat on the driver’s side of the car and pinned

Defendant against the roof. Defendant punched Jacob and tried to poke him in the

eyes. Defendant brandished the knife at Jacob. Jacob and Defendant came out of the

car and continued to wrestle, both throwing more punches. Jackson told Jacob that

Defendant had a knife. Jacob tried to subdue Defendant while Defendant was on top

 -5-
 STATE V. ENGLISH

 Opinion of the Court

of him. Jackson kicked Defendant in the face a few times. When Defendant asked

Jacob to let him go, Jacob told Defendant he would let him go after Defendant dropped

the knife. Jackson wrapped his arms around Defendant’s legs and pushed his foot up

against Defendant’s ribs to help subdue him. After approximately one minute,

Defendant dropped the knife, Jackson picked it up, and Jacob let Defendant get up.

 When the Capps brothers started to walk away from Defendant, Defendant got

in the car, put it in drive, turned it around with tires squealing, and “floored it” in

their direction. He “stomped” the gas “at high RPMs” and drove about 15 to 20 miles

per hour toward them. Jackson stepped behind the gas pump to shield himself. Jacob

jumped up on the hood of the car to avoid being pinned against the concrete wall of

the gas station. When Defendant crashed the car into the wall of the gas station,

Jacob rolled off the hood onto the ground. Defendant backed the car up and sped

away.

 III. Discussion

 Defendant argues that the trial court erred by denying his motion to dismiss

for insufficient evidence the charges of first-degree kidnapping and one count of

assault with a deadly weapon.

 This Court reviews a trial court’s denial of a motion to dismiss for insufficient

evidence de novo. State v. Smith, 186 N.C. App. 57, 62, 650 S.E.2d 29, 33 (2007).

Denial of a motion to dismiss is proper if there is substantial evidence of each

 -6-
 STATE V. ENGLISH

 Opinion of the Court

essential element of the offense and that the defendant was the perpetrator. State v.

Fritsch, 351 N.C. 373, 378, 526 S.E.2d 451, 455 (2000). “Substantial evidence is such

relevant evidence as a reasonable mind might accept as adequate to support a

conclusion.” State v. Smith, 300 N.C. 71, 78-79, 265 S.E.2d 164, 169 (1980) (citations

omitted). When reviewing a challenge to the sufficiency of the evidence, we view the

evidence in the light most favorable to the State. Fritsch, 351 N.C. at 378-79, 526

S.E.2d at 455.

 A. First-degree kidnapping

 Defendant’s sole argument on appeal regarding the kidnapping offense is that

the State failed to provide substantial evidence that Defendant’s purpose was to

terrorize Gonzalez.

 Kidnapping is defined by statute as follows:

 (a) Any person who shall unlawfully confine, restrain, or
 remove from one place to another, any other person 16
 years of age or over without the consent of such person, or
 any other person under the age of 16 years without the
 consent of a parent or legal custodian of such person, shall
 be guilty of kidnapping if such confinement, restraint or
 removal is for the purpose of:
 .....
 (3) Doing serious bodily harm to or terrorizing the person
 so confined, restrained or removed or any other person . . .

N.C. Gen. Stat. § 14-39(a)(3) (2018). The offense is first-degree kidnapping if the

person kidnapped was not released by the defendant in a safe place. State v. Moore,

315 N.C. 738, 742, 340 S.E.2d 401, 404 (1986) (citing N.C. Gen. Stat. § 14-39)). “Since

 -7-
 STATE V. ENGLISH

 Opinion of the Court

kidnapping is a specific intent crime, the State must prove that the defendant

unlawfully confined, restrained, or removed the person for one of the eight purposes

set out in the statute.” Id. at 743, 340 S.E.2d at 404. For purposes of this statute,

“[i]ntent, or the absence of it, may be inferred from the circumstances surrounding

the event and must be determined by the jury.” State v. White, 307 N.C. 42, 48, 296

S.E.2d 267, 271 (1982) (citations omitted).

 In this case, the State indicted Defendant on the charge of first-degree

kidnapping, alleging that Defendant unlawfully confined and restrained Gonzalez for

the purpose of terrorizing her. Terrorizing is “more than just putting another in fear”;

it is “putting that person in some high degree of fear, a state of intense fright or

apprehension.” Moore, 315 N.C. at 745, 340 S.E.2d at 405 (internal quotation marks

and citation omitted). In determining the sufficiency of the evidence of intent to

terrorize, “the test is not whether subjectively the victim was in fact terrorized, but

whether the evidence supports a finding that the defendant’s purpose was to terrorize

her.” Id. Nonetheless, the “victim’s subjective feelings of fear, while not

determinative of the defendant’s intent to terrorize, are relevant.” State v. Baldwin,

141 N.C. App. 596, 604, 540 S.E.2d 815, 821 (2000) (citations omitted) (sufficient

evidence that defendant acted with purpose to terrorize victim, who was “petrified”

when defendant confined her to her apartment against her will by brandishing a

loaded gun, despite her requests to leave). See also State v. Surrett, 109 N.C. App.

 -8-
 STATE V. ENGLISH

 Opinion of the Court

344, 350, 427 S.E.2d 124, 127 (1993) (sufficient evidence that defendant “intended by

his actions and commands to put the victim in a state of intense fright or

apprehension” where defendant struggled to hold victim in car against her will

despite her screams).

 In this case, the evidence shows the following: (a) unbeknownst to Gonzalez,

Defendant lay in the back seat of her car holding a knife while he waited for her to

get off work; (b) Defendant forced Gonzalez to remain inside and drive the car by

applying enough choking force to her neck to create visible red marks and threatening

her with a knife; and (c) even after arriving at the gas station where Gonzalez

screamed for help and tried to open the door to get out of the car, Defendant

attempted to force Gonzalez to stay in the car by hitting the top of her head with

enough force to cause her to be lightheaded. Considered in the light most favorable

to the State, this evidence was sufficient to support a finding that Defendant confined

Gonzalez with the intent to put her in a “high degree of fear, a state of intense fright

or apprehension.” Moore, 315 N.C. at 745, 340 S.E.2d at 405. Moreover, Gonzalez’s

screams, frantic exit from the car, and escape into the convenience store show her

fear during the incident, which is also relevant to support the finding that Defendant

intended to terrorize her. See Baldwin, 141 N.C. App. at 604, 540 S.E.2d at 821.

Accordingly, the State provided substantial evidence of this element of the offense,

 -9-
 STATE V. ENGLISH

 Opinion of the Court

and denial of Defendant’s motion to dismiss was proper. See Fritsch, 351 N.C. at 378,

526 S.E.2d at 455.

 B. Assault with a deadly weapon

 Defendant next argues that the trial court erred by denying Defendant’s

motion to dismiss for insufficient evidence the charge of assault with a deadly weapon

on Jackson, because the State failed to present sufficient evidence that Defendant

assaulted him.

 Misdemeanor assault with a deadly weapon is defined by statute to include

assault with use of a deadly weapon. N.C. Gen. Stat. § 14-33(c)(1) (2018). “There is

no statutory definition of assault in North Carolina, and the crime of assault is

governed by common law rules.” State v. Roberts, 270 N.C. 655, 658, 155 S.E.2d 303,

305 (1967). Our Supreme Court has defined assault as “an overt act or an attempt,

or the unequivocal appearance of an attempt, with force and violence, to do some

immediate physical injury to the person of another, which show of force or menace of

violence must be sufficient to put a person of reasonable firmness in fear of immediate

bodily harm.” Id. (internal quotation marks and citations omitted). The Court

further explained:

 This common law rule places emphasis on the intent
 or state of mind of the person accused. The decisions of the
 Court have, in effect, brought forth another rule known as
 the “show of violence rule,” which places the emphasis on
 the reasonable apprehension of the person assailed. The
 “show of violence rule” consists of a show of violence

 - 10 -
 STATE V. ENGLISH

 Opinion of the Court

 accompanied by reasonable apprehension of immediate
 bodily harm or injury on the part of the person assailed
 which causes him to engage in a course of conduct which
 he would not otherwise have followed. . . . Thus, there are
 two rules under which a person may be prosecuted for
 assault in North Carolina.

Id. (citation omitted). See also State v. Floyd, 369 N.C. 329, 336, 794 S.E.2d 460, 465

(2016) (the show of violence rule is based on a violent act or threat that causes fear

in another person, as distinguished from an attempt to cause injury to another

person).

 On appeal, Defendant argues that the State’s evidence does not satisfy either

rule for establishing assault, as it does not show that Defendant drove the car toward

Jackson or that Defendant’s conduct would put a reasonable person in Jackson’s

position in fear of immediate bodily harm. Defendant supports this argument by

highlighting conflicting testimony.

 On direct examination as a witness for the State, Jackson provided the

following testimony:

 Q. And at what point did you realize that that vehicle was
 coming towards you?
 A. When it -- once the gas was stomped and it started
 heading towards us.
 Q. When you say the gas was stomped, what alerted you to
 that?
 A. You could hear it. High rpm’s.
 Q. And you mentioned the location where you were over at
 the pump. Were -- did you have to take any measures to
 avoid being hit by the vehicle?

 - 11 -
 STATE V. ENGLISH

 Opinion of the Court

 A. No, Ma’am, I didn’t.
 Q. And what about your brother? What were you able to
 observe?
 A. He tried to get out of the way. Obviously, he couldn’t.
 Jumped up, like perfect timing and just caught the hood of
 the car and landed on it with his knees and kind of just
 plopped on the front and then rolled right off and jumped
 behind that pillar right there.

On cross-examination, Jackson testified:

 Q. . . . . You got out of the way?
 A. Yes, sir.

Finally, on re-direct examination, Jackson testified:

 Q. Jackson, you mentioned earlier that when the defendant
 was driving the car in your direction, you had to hide
 behind the gas pump?
 A. Yes, sir. Or yes, Ma’am. Excuse me.
 Q. Why did you even go to hide behind the gas pump?
 A. A moving vehicle coming towards me and I don’t really
 like that. Just getting out of the way.
 Q. How far away was the vehicle from you when you made
 the decision to go and hide where the gas pumps were?
 A. I don’t know. Maybe 10 or 15 feet. I am not sure.
 Q. Where the vehicle actually drove, was that in the place
 you were standing from when you first noticed the vehicle
 coming towards you?
 A. No.
 Q. Let me ask that another way. Were you standing, prior
 to moving behind the gas pump, were you standing in the
 direction the vehicle was moving?
 A. Do you mean like when he started pulling towards the
 bushes? No.

 - 12 -
 STATE V. ENGLISH

 Opinion of the Court

 Q. But when he started pulling towards you and your
 brother?
 A. Yes. When he started pulling towards -- well, yes, when
 he started pulling towards us, I was kind of already
 walking up on that little sidewalk area, so I was already
 right there by the pump. All I had to do was take two steps
 and I was behind it.

 The State also presented testimony by a police officer who interviewed

Jackson. The officer testified that Jackson stated that Defendant “drove directly

towards the two brothers attempting to run them over.”

 When viewed in the light most favorable to the State, the trial testimony

provides substantial evidence of assault. First, the testimony supports a conclusion

that Defendant committed an “overt act or an attempt, or the unequivocal appearance

of an attempt, with force and violence, to do some immediate physical injury” to

Jackson by driving a moving vehicle toward him at a high rate of speed. Roberts, 270

N.C. at 658, 155 S.E.2d at 305. Second, the testimony supports a conclusion that

Defendant’s actions—which included driving the car fast toward Jackson

immediately after both had engaged in a violent struggle—put Jackson reasonably in

fear of immediate bodily harm and prompted him to get out of the way. See id.; Floyd,

369 N.C. at 336, 794 S.E.2d at 465 (show of violence rule is based on a violent act or

threat that causes fear in another person).

 We reject Defendant’s contention that any conflicting testimony in the record

renders the State’s evidence insufficient. “[C]ontradictions and discrepancies do not

 - 13 -
 STATE V. ENGLISH

 Opinion of the Court

warrant dismissal of the case but are for the jury to resolve.” Fritsch, 351 N.C. at

379, 526 S.E.2d at 455 (citation omitted). Thus, all evidence about whether Jackson

was in fear of immediate harm was properly put before the jury. State v. Allen, 360

N.C. 297, 305, 626 S.E.2d 271, 279 (2006) (citation omitted) (“It is for the jury to

decide issues of fact when conflicting information is elicited by either party.”).

 Because the State presented sufficient evidence to support the conclusion that

Defendant assaulted Jackson, the trial court did not err by denying Defendant’s

motion to dismiss.

 IV. Conclusion

 The State presented sufficient evidence of Defendant’s intent to terrorize

Gonzalez and that Defendant assaulted Jackson. Accordingly, we discern no error by

the trial court in denying Defendant’s motion to dismiss for insufficient evidence of

these two offenses.

 NO ERROR.

 Chief Judge McGEE and Judge DIETZ concur.

 - 14 -