**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

―――――――――――

**No. 22-4384**

―――――――――――

UNITED STATES OF AMERICA,

        Plaintiff – Appellee,

v.

KEWAN MARQUIS SHADE,

        Defendant – Appellant.

―――――――――――

Appeal from the United States District Court for the Western District of North Carolina, at Asheville.  Martin K. Reidinger, Chief District Judge.  (1:20-cr-00103-MR-WCM-1)

―――――――――――

Argued:  December 10, 2024               Decided:  January 29, 2025

―――――――――――

Before DIAZ, Chief Judge, AGEE, and RICHARDSON, Circuit Judges.

―――――――――――

Affirmed by unpublished per curiam opinion.

―――――――――――

**ARGUED:**  James Walter Kilbourne, Jr., ALLEN STAHL & KILBOURNE, PLLC, Asheville, North Carolina, for Appellant.  Mahogane Denea Reed, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.  **ON BRIEF:** Kenneth A. Polite, Jr., Assistant Attorney General, Lisa H. Miller, Deputy Assistant Attorney General, William A. Glaser, Appellate Section, Criminal Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C.; Dena J. King, United States Attorney, Charlotte, North Carolina, Amy E. Ray, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Asheville, North Carolina, for Appellee.

——————

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Kewan Shade pleaded guilty to possessing a firearm as a convicted felon and was sentenced to 60 months' imprisonment. He now appeals his sentence, arguing primarily that the district court erred in calculating his Guidelines recommended range of imprisonment. Because we think Shade's arguments lack merit, we affirm his sentence.

I.

In 2014, Shade was convicted of five counts of assault with a deadly weapon with intent to kill under N.C. Gen. Stat. § 14-32(c) and one count of assaulting a law enforcement officer with a firearm. All told, he served almost three years in prison for his violent behavior.

In 2020, Asheville Police discovered Shade was buying and selling guns through social media. After an undercover operation in which a detective sold him three firearms, law enforcement tried to apprehend him, but he fled. Shade ran two red lights and drove on the wrong side of the road to avoid traffic before he was ultimately arrested. At that time, police found four firearms in his possession: the three firearms from the earlier undercover sale and another stolen pistol.

Soon thereafter, a grand jury in the Western District of North Carolina indicted Shade on one count of possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1). He eventually pleaded guilty without a plea agreement.

In advance of Shade's sentencing, the probation office put together a pre-sentence investigation report ("PSR") that recommended, *inter alia*, (1) assignment of a base offense

3

level of 20 under U.S.S.G. § 2K2.1(a)(4)(A), based on the determination that his prior conviction for assault with a deadly weapon with intent to kill was a Guidelines "crime of violence," and (2) a two-point enhancement under U.S.S.G. § 3C1.2 for reckless endangerment during his flight from arrest. Shade objected to both recommendations. The probation office maintained its position, thus teeing the objections up for the district court at the sentencing hearing. Before the hearing, Shade moved to file his entire sentencing memorandum (and an exhibit attached thereto) under seal because he alleged it contained sensitive medical information.

At the sentencing hearing, the district court first addressed Shade's motion to seal. It denied the motion without prejudice under *United States v. Harris*, 890 F.3d 480 (4th Cir. 2018), "giving [him] a mulligan" to file another more targeted motion and keeping the memorandum provisionally under seal pending disposition of a renewed motion. J.A. 212. Shade filed the new motion to seal the same day he noted this appeal, and that motion remains pending on the district court's docket as of the date of this opinion.

The district court then took up Shade's objections to his PSR and, after hearing argument, overruled them. It adopted the PSR in full and calculated his Guidelines range of imprisonment to be between 57 and 71 months before hearing argument on an appropriate sentence. The Government argued for a 66-month sentence while Shade asked for a below Guidelines sentence of 32 months. After considering his specific arguments and the 18 U.S.C. § 3553(a) factors, the district court sentenced him to a 60-month term of imprisonment.

4

Shade timely noted his appeal, and we have jurisdiction to review challenges to his conviction and sentence under 18 U.S.C. § 3742 and 28 U.S.C. § 1291.[1]

## II.

Shade's only live challenges on appeal relate to the procedural reasonableness of his sentence, so we review those in turn.[2] For the reasons discussed, his arguments are unpersuasive.

---

[1] We may not, however, consider his challenge to the preliminary denial of his motion to seal his sentencing memorandum. That denial was without prejudice and Shade filed a renewed motion that remains undecided in the district court. The sealing issue is thus not final, so we do not have jurisdiction to review it. *See* 28 U.S.C. § 1291. And we certainly cannot issue an advisory opinion to guide the district court on how to fix a hypothetical error it may never make. To borrow the district court's metaphor, a mulligan allows him to take another try at his tee shot; it does not permit us to place the ball on the green for him.

That said, we do not think the presence of the pending motion to seal on the district court's docket extinguishes our jurisdiction over Shade's otherwise final conviction and sentence. While we acknowledge that the presence of the collateral pending motion to seal means there is something left for the district court to do in a literal sense, the merits of his conviction and sentence are settled, so the judgment is ripe for review. *See United States v. Lanham*, 631 F.2d 356, 357 (4th Cir. 1980) ("[I]n a criminal case, final judgment means conviction and sentence."); *cf. Budinich v. Becton Dickinson & Co.*, 486 U.S. 196, 199 (1988) ("A question remaining to be decided after an order ending litigation on the merits does not prevent finality if its resolution will not alter the order or moot or revise decisions embodied in the order.").

[2] Shade also appealed his § 922(g)(1) conviction, arguing that the statute is facially unconstitutional in a post-*Bruen* world. As counsel recognized at argument, it is settled law in our circuit that § 922(g)(1) remains facially constitutional post-*Bruen*. *United States v. Canada*, 123 F.4th 159, 161 (4th Cir. 2024).

5

A.

According to Shade, the district court incorrectly calculated his Guidelines range of imprisonment. He argues that (1) his prior conviction for assault with a deadly weapon with intent to kill under N.C. Gen. Stat. § 14-32(c) was not categorically a "crime of violence" under the Guidelines, and (2) his flight from arrest posed no substantial risk of harm so as to warrant the two-point reckless endangerment bump. We disagree on both fronts.

1.

Section 2K2.1(a)(4)(A) of the Guidelines provides for an enhanced base offense level if "the defendant committed any part of the instant offense subsequent to sustaining one felony conviction of . . . a crime of violence." The applicable Guidelines' definition of a "crime of violence" includes a state law felony "that has an element the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 4B1.2(a)(1).

We review whether N.C. Gen. Stat. §14-32(c) fits that definition de novo. *United States v. Rice*, 36 F.4th 578, 581 n.3 (4th Cir. 2022). Common sense suggests it does.[3] But

---

[3] We are, of course, not the first to recognize the relative absurdity of the premise of this question. *See, e.g.*, *United States v. Battle*, 927 F.3d 160, 163 n.2 (4th Cir. 2019) ("Through the *Alice in Wonderland* path known as the 'categorical approach,' we must consider whether [Defendant's] assault of a person with the intent to murder is a crime of violence."); *United States v. Rice*, 36 F.4th 578, 579 (4th Cir. 2022) ("We are asked to decide if the North Carolina crime of assault inflicting physical injury by strangulation is a 'crime of violence.' Ask any person on the street and they would say of course. In fact, they would likely question our common sense for asking such an obvious question. But we must resolve this issue using the 'categorical approach,' not common sense."); *see also* (Continued)

6

instead of common sense, we apply the categorical approach. *Id.* at 580. And under that approach, "[a] predicate offense qualifies as a crime of violence if all of the conduct criminalized by the statute—including the most innocent conduct—matches or is narrower than the Guidelines' definition of crime of violence." *United States v. Salmons*, 873 F.3d 446, 448 (4th Cir. 2017) (internal quotations omitted). But "if the offense 'can be committed without satisfying the definition of crime of violence, then it is overbroad and not a categorical match.'" *United States v. Simmons*, 917 F.3d 312, 316–17 (4th Cir. 2019) (quoting *Salmons*, 873 F.3d at 448).

In sum, when the predicate crime's "statutory elements necessarily require the use, attempted use, or threatened use of physical force[,]" we have a categorical match. *United States v. Mack*, 56 F.4th 303, 305 (4th Cir. 2022) (cleaned up). So, we start by looking at what is required to secure a conviction under N.C. Gen. Stat. § 14-32(c): "(1) an assault; (2) with a deadly weapon; (3) with the intent to kill." *State v. Stewart*, 750 S.E.2d 875, 882 (N.C. Ct. App. 2013) (cleaned up).

In arguing that North Carolina assault with a deadly weapon *with the intent to kill* is not a crime of violence, Shade takes aim at the first and third elements. In his mind, an N.C. Gen. Stat. § 14-32(c) conviction can occur (i) without a communicated "threat of force" and (ii) through a *mens rea* of mere negligence. We address his arguments in turn.

---

*United States v. Fulks*, 120 F.4th 146, 163 (4th Cir. 2024) (noting this kind of analysis sometimes "insist[s] that we wrap ourselves in a cocoon and take leave of . . . reality").

As we understand his first position, Shade claims that because North Carolina assault requires satisfying an objective inquiry, it can be accomplished without the actual communication of a threat of physical force from the assailant to another person. And because a crime of violence's "threatened use of force" requires a communicated threat from one person that is received by another under *United States v. Taylor*, 596 U.S. 845 (2022), no North Carolina criminal assault fits within the Guidelines' crime of violence definition. We are unconvinced by his novel argument.[4]

Criminal assault in North Carolina is defined by common law. *United States v. Vinson*, 805 F.3d 120, 123 (4th Cir. 2015) (citing *State v. Roberts*, 155 S.E.2d 303, 305 (N.C. 1967)). Three definitions have emerged, the most common of which we have dubbed the "'attempted battery' formulation." *Simmons*, 917 F.3d at 318–19; *see Roberts*, 155 S.E.2d at 305. That formulation—on which Shade relies—defines criminal assault "as 'an overt act or an attempt, or the unequivocal appearance of an attempt, with force and violence, to do some immediate physical injury to the person of another, which show of force or menace of violence must be sufficient to put a person of reasonable firmness in

---

[4] We assume *arguendo* that *Taylor*'s interpretation of the Hobbs Act force clause's use of "threatened use of physical force" extends to the Guidelines' use of the same phrase in its own force clause. *See* 18 U.S.C. § 924(c)(3)(B); U.S.S.G. § 4B1.2(a)(1); *but compare Mack*, 56 F.4th at 305 n.1 (noting that cases interpreting what constitutes a violent felony under the ACCA's force clause are precedential for evaluating what constitutes a Guidelines crime of violence because the clauses are identical), *with United States v. Green*, 996 F.3d 176, 181 (4th Cir. 2021) (explaining the same reciprocity does not always apply to comparing the Hobbs Act and Guidelines' force clauses because the comparative force clauses are not identical).

fear of immediate bodily harm.'" *State v. Dew*, 864 S.E.2d 268, 273–74 (N.C. 2021) (quoting *Roberts*, 155 S.E.2d at 305).

Shade takes the objective standard in that definition to mean that an assault can be accomplished without the threat of force being communicated to someone else, so long as a reasonable person would construe it as such. But that misunderstands the nature of the relevant objective inquiry. It is the "show of force or menace of violence"—not whether the threat of force is communicated in the first place—"which . . . must be sufficient to put a person of reasonable firmness in fear of immediate bodily harm." *Roberts*, 155 S.E.2d at 305. The objective inquiry comes in only when assessing whether the offer of physical force is sufficient to carry an attendant reasonable fear of harm. *See Dew*, 864 S.E.2d at 274 (citing favorably to Black's Law's definition of assault, which provides that assault is "[t]he threat or use of force on another that causes that person to have a *reasonable apprehension* of imminent harmful or offensive contact" (alteration in original) (emphasis added)). In other words, the objective inquiry presupposes the existence of a communicated threat between the assailant and another person. The premise of Shade's argument is therefore faulty.

The North Carolina cases he cites do not suggest that a prosecutable assault occurs when a person makes a threat of force about which no person actually knows so long as an amorphous reasonable person would know. *State v. Musselwhite* asked whether an assault had occurred when the assailant tried to stab another person, but there was no evidence that the would-be victim "was put in fear of the consequence of the attack." 297 S.E.2d 181, 184 (N.C. Ct. App. 1982). The Court of Appeals held no such evidence was required

9

because a reasonable person would fear bodily harm if an assailant swung a knife at them. *See id.* ("All that is necessary to sustain a conviction for assault is evidence of an overt act showing an intentional offer by force and violence to do injury to another sufficient to put a person of reasonable firmness in apprehension of immediate bodily harm."). Similarly, *State v. Starr* considered whether a person who shot at a door while firemen were trying to break it down (and after they succeeded in doing so and stood in the doorway) could be convicted of assault over the defendant's argument that the firemen did not "kn[o]w of and otherwise dr[a]w fear and apprehension from [his] blind shots into the door." 703 S.E.2d 876, 880 (N.C. Ct. App. 2011). The facts showed the firemen knew at one point or another that the defendant had a gun and was firing at them. *Id.* at 878. And because the defendant's intentional shooting at the people at his door "was sufficient to put a person of reasonable firmness in apprehension of immediate bodily harm," the facts supported an assault conviction. *Id.* at 880 (internal quotations omitted). Contrary to Shade's reading, neither case instructs that an individual can be convicted for assault under North Carolina law where the threat of harm was not communicated to another person.

Because we do not understand North Carolina to criminalize an uncommunicated threat of bodily harm as assault, we are unpersuaded by Shade's first argument. A North Carolina conviction for assault, and therefore N.C. Gen. Stat. § 32-14(c), necessarily requires, at minimum, a "threat of force."

Next, Shade conceded his second challenge—the *mens rea* issue—at oral argument. *See* Oral Arg. 9:25–40. His concession was appropriate in light of our recent case law, as we have previously construed North Carolina's addition of the "with the intent to kill"

10

element to assault crimes in analogous statutes to mean they cannot be achieved through negligence. *E.g.*, *United States v. Townsend*, 886 F.3d 441, 445 (4th Cir. 2018) ("[W]e conclude that [assault with a deadly weapon with the intent to kill and inflict serious injury] is categorically a violent felony under the force clause of the ACCA because [its] intent to kill element . . . requires proof of a specific intent to kill."); *United States v. Vereen*, 703 F. App'x 171, 173–74 (4th Cir. 2017) (rejecting the same *mens rea* argument Shade advances here, albeit on plain error review, in holding N.C. Gen. Stat. § 14-32(c) is a Guidelines crime of violence); *see also United States v. Battle*, 927 F.3d 160, 165 (4th Cir. 2019) (holding Maryland's equivalent crime of assault with intent to murder "is a specific intent crime and the only *mens rea* that would support the conviction is the specific intent to bring about the death of the assault victim"). Because a N.C. Gen. Stat. § 14-32(c) conviction requires proof of a specific intent to kill, Shade's *mens rea* argument was properly conceded.

This is one of those rare cases that the categorical approach aligns with common sense, and we are satisfied that N.C. Gen. Stat. § 14-32(c) fits comfortably within the Guidelines' definition of a crime of violence.

## 2.

Shade next takes issue with the district court's finding that the two-point enhancement prescribed under U.S.S.G. § 3C1.2 applied to his sentence. That enhancement is appropriate if the district court finds that "the defendant recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer." U.S.S.G. § 3C1.2. To prevail on this challenge, Shade must convince

11

us the district court's finding was clearly erroneous. *United States v. Shivers*, 56 F.4th 320, 324 (4th Cir. 2022). We will not disturb the district court's "application of the § 3C1.2 enhancement . . . unless on the entire evidence, we are left with the definite and firm conviction that a mistake has been committed." *Id.* (cleaned up).

According to Shade, his evasion of arrest never posed a substantial risk to anyone. In so arguing, he relies on our statement that "the fact of a vehicular flight, alone, does not necessarily justify an application of § 3C1.2. Something more is required." *United States v. Burnley*, 988 F.3d 184, 191 (4th Cir. 2021). If the record reflected that Shade got in his car and drove away as a law-abiding driver, he might have an argument. But we have no issue determining that the record here shows the "something more" for which we searched in *Burnley*. *See id.* He does not dispute that while fleeing police, he ran two red lights and "passed stopped traffic by driving against the flow of traffic on the wrong side of the road." J.A. 75. When taking view of those facts, we conclude the district court did not clearly err in finding that Shade's flight presented a substantial risk of serious bodily injury to other people.

**\*\*\*\***

At bottom, the record shows the district court thoroughly considered Shade's nonfrivolous arguments, walked through the relevant § 3553(a) factors, and explained why the sentence given was tailored to the criminal defendant before it.[5] Shade's sentence was

---

[5] To the extent Shade argues that the district court's treatment of some of his sentencing arguments—for downward departures based on his alleged diminished mental capacity and some abstract threat of duress—in considering an appropriate sentence (Continued)

12

procedurally reasonable. The district court did its job with aplomb, and we commend its thoughtful analysis in crafting an appropriate sentence.

### III.

For the reasons discussed, we will not disturb Shade's sentence.

*AFFIRMED*

---

presents an independent ground for vacatur of his sentence, the transcript of his sentencing hearing compels us to disagree.

13